## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| City of Wyoming, Minnesota, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>Procter & Gamble Company; Kimberly-Clark Corporation; Nice-Pak Products, Inc.; Professional Disposables International, Inc.; Tufco Technologies Inc.; and Rockline Industries,<br><br>Defendants. | Court File No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, City of Wyoming, Minnesota ("Plaintiff") brings this action individually and as a putative class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of all others similarly situated. Plaintiff, by and through its undersigned attorneys, based on its individual experiences, the independent investigation of counsel, and information and belief, alleges as follows:

### INTRODUCTION

1.    This class action is brought against Defendants Procter & Gamble Company ("P&G"), Kimberly-Clark Corporation ("Kimberly-Clark"), Nice-Pak Products, Inc. ("Nice-Pak"), Professional Disposables International, Inc. ("PDI"), Tufco Technologies Inc. ("Tufco"), and Rockline Industries ("Rockline") (collectively referred to as "Defendants"), to recover for the harm caused by Defendants' unfair practices associated with the design, testing, manufacturing, marketing, distribution,

1

and/or sale of *allegedly* flushable bathroom wipes. As the key participants in the flushable wipes market, Defendants have had access to a plethora of information about the harm their wipes cause to plumbing systems.

2.      "Flushable wipes" include all wipe products designed, distributed, marketed and advertised by the Defendants as suitable or able to be flushed down a toilet without causing harm to plumbing, sewer, and/or septic systems.  Flushable wipes are functionally interchangeable, fungible goods, and the Defendants know, and have known, of the harm they cause to sewer systems and waste treatment facilities yet continue to manufacture and promote them as flushable.

3.      Contrary to the Defendants' representations, these flushable wipes do not degrade after flushing. Rather, the flushable wipes remain intact long enough to pass through private wastewater drain pipes into the municipal sewer line causing clogs and other issues for municipal and county sewer systems and wastewater treatment plants, resulting in thousands, if not millions, of dollars in damages.

4.      Despite numerous complaints from state and local sewer authorities both in United States, and internationally, Defendants have not removed the false claims regarding the flushability of these wipes.

5.      This lawsuit is brought for the benefit of the public.  Defendants' refusal to act and redress the problems with their alleged flushable wipes makes Fed. R. Civ. P. 23(b)(2) declaratory and equitable relief, including remediation, particularly fitting for this action and will alleviate future harm and expense associated with ongoing clean-up of Defendants' flushable wipes.  Additionally, under state law,

2

Plaintiff and the putative state sub-class are entitled to certification of a Rule 23(b)(2) enjoining the Defendants' practices and a (b)(3) class to redress the damages that they have sustained resulting from Defendants' misrepresentations about the flushability and degradability of their wipes.

## **PARTIES**

6.      Plaintiff City of Wyoming is located in the State of Minnesota, 33 miles north of Minneapolis.  Plaintiff operates 13 lift stations that pump its wastewater to a treatment facility that is co-owned by the cities of Wyoming, Chisago, Lindstrom, and Stacy Minnesota. Plaintiff has incurred expenses associated with the removal of flushable wipes from its lift stations and faces the continuing, ongoing threat of future harm from the Defendants' continued sale and promotion of wipes as "flushable" and "sewer and septic safe."

7.      Defendant P&G is an Ohio corporation with its headquarters located at One Procter & Gamble Plaza, Cincinnati, Ohio. Together with its subsidiaries, it manufactures, distributes, markets, and sells a variety of flushable wipes worldwide, and at all times relevant to this action has done so within this Judicial District. The company operates in four industry-based sectors: (1) Baby, Feminine and Family Care; (2) Beauty, Hair and Personal Care; (3) Fabric and Home Care; and (4) Health and Grooming. The Baby, Feminine and Family Care sector provides facial and bathroom tissue, paper towels, napkins, infant and child wipes, feminine care, and related products including the Always, Bounty, Charmin, Luvs, Pampers, Puffs, and Tampax brands.

8.      Defendant Kimberly-Clark is a Delaware corporation with its principal executive offices located at P.O. Box 619100, Dallas, Texas. Together with its subsidiaries, it manufactures, distributes, markets, and sells a variety of flushable wipes worldwide, and at all times relevant to this action has done so within this Judicial District. The company operates in three segments: (1) Personal Care; (2) Consumer Tissue; and (3) K-C Professional. The Personal Care segment provides infant and child wipes, feminine care, and related products including the U by Kotex, Poise, Huggies, and Pull-Ups brands. The Consumer Tissue segment provides facial and bathroom tissue, paper towels, napkins, and related products under the Kleenex, Scott, Cottonelle, and Viva brands.

9.      Defendant Nice-Pak is a New York corporation with its corporate headquarters located at Two Nice Pak Park, Orangeburg, New York. Nice-Pak is a global leader in the design, manufacture, marketing, and distribution of branded and private label wet wipe products.  Together with its subsidiaries and affiliates, Nice-Pak makes and markets pre-moistened wipes, including baby wipes, antibacterial towelettes, cloths for cleaning lenses and removing makeup, and wipes for surface cleaning and industrial use. Nice-Pak makes flushable wipes under its Nice 'n Clean brand.  Nice-Pak also manufactures flushable wipes for private label retailers including Costco, Target, and CVS.

10.     Defendant PDI is a New York Corporation with its headquarters at Two Nice Park, Orangeburg, New York.  PDI is an affiliate of Nice-Pak.  Together with its subsidiaries and affiliates, PDI develops, manufactures, and distributes brand and retailer

4

brand wet wipes across consumer, healthcare and foodservice business channels. PDI designs, makes, markets, and sells flushable wipes under its Hygea brand.

11.    Defendant Tufco is a Delaware corporation with its headquarters at 3161 South Ridge Road, Green Bay, Wisconsin. Tufco is a wholly owned subsidiary of Griffin Holdings LLC. Together with its subsidiaries and affiliates, Tufco manufactures a wide variety of consumer products touting itself as "the largest contract manufacturer of branded wipes in the USA." Tufco offers its private label customers manufacturing and packaging services, including the manufacture and packaging of flushable wipes.

12.    Defendant Rockline is a Wisconsin corporation with its headquarters at 4343 S. Taylor Drive, Sheboygan, Wisconsin. Together with its subsidiaries and affiliates, Rockline designs and manufactures a wide variety of consumer products that are distributed and sold worldwide, and at all times relevant to this action has done so within this Judicial District. According to its website (www.rocklineind.com), Rockline's primary product line is wet wipes, including flushable wipes. Among other product lines offered, Rockline offers "contract manufacturing" for various retailers. Rockline is the contract manufacturer for the Walmart Equate Brand.

## JURISDICTION AND VENUE

13.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d), because members of the proposed Plaintiff Class are municipalities located in states different from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

14.    This Court has personal jurisdiction over Plaintiff because Plaintiff resides in this District.  This Court has personal jurisdiction over Defendants because they conduct substantial business in this District, and some of the actions giving rise to the Complaint took place in this District.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to these claims occurred in this District, Defendants reside, are found, have their principle place of business, have an agent, or have transacted substantial business in this District, and Defendants have caused harm to Class members residing in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A.    Municipal Sewer and Wastewater Treatment Systems

16.    Wastewater is generated each time an individual turns on a faucet, washes a load of laundry, or flushes a toilet. This wastewater exits the house or business through a lateral pipe. The lateral pipe runs the length of the property out to the street or rear of the property where it connects to the public sewer system at a pipe called the sewer main.

17.    Sewer mains connect to collectors and trunk lines, all larger and larger pipes that eventually become interceptor sewers, which are the largest pipes in the public sewer system. The wastewater eventually flows into a wastewater treatment plant.

18.    The wastewater generally travels through the pipes due to gravity, but some pipes may require pumps. If the wastewater flows due to gravity, there is less agitation in the water than when it is pushed through with a pump.

19.    At the sewer, the waste water goes through "pre-treatment," which

removes all materials that can be easily collected from the raw sewage before they damage or clog the pumps and sewage lines of primary treatment clarifiers. Objects that are commonly removed during pretreatment include trash, tree limbs, leaves, branches, and other large objects.

20.    The sewage water then passes through a bar screen to remove all large objects like cans, rags, sticks, plastic packets, etc. that are carried in the sewage stream. This is most commonly done with an automated mechanically raked bar screen in modern plants serving large populations, while in smaller or less modern plants, a manually cleaned screen may be used. The raking action of a mechanical bar screen is typically paced according to the accumulation on the bar screens and/or flow rate.  If solids are not removed, they become entrained in pipes and moving parts of the treatment plant, and can cause substantial damage and inefficiency in the process.

21.    Because the so-called flushable wipes do not degrade like toilet paper, they ultimately get caught in the bar screen and block the passage of wastewater, causing the system to shut down and requiring their manual removal.

**B.    Flushable Wipes Are Not Flushable**

22.    The flushable wipes market includes pre-moistened wipes that are manufactured, marketed, distributed, and/or sold to consumers as being "flushable" or sewer or septic system safe when flushed down the toilet.

23.    Flushable wipes must hold up under the pressure of scrubbing *after* being

7

soaked in water and propylene glycol lotion for an extended period of time.[1]  This is referred to as the wipe's "Wet Strength" – i.e., the ability to hold together when subjected to water.

24.    In order to maintain "wet strength," and despite the Defendants' claims otherwise, flushable wipes do ***not*** degrade after flushing.  The flushable wipes once in the sewer system ultimately wrap around structures within the system, such as filters or pumps creating clogs and back-ups.  In order to clear the clogs, the systems need to be shut down and the wipes manually removed.

25.    Frank Stuemke, of the Minnesota Rural Water Association, was recently quoted as saying that so called flushable wipes are "a huge problem – an absolutely horrible problem." "Wipes have shortened the sewer pumps' lives and transformed what it means to maintain a [sewer] system…To smaller communities, in particular, it can be difficult." [2]

26.    On April 3, 2015, workers in Avon, Minnesota, pulled up two wastewater pumps from 15 and 25 feet underground in order to remove—with gloved hands and tools—gobs of wipes.  Avon's Utilities Supervisor, Jon Forsell, and his team monitor these pumps daily, and are forced to remove wipes weekly.  As Mr. Forsell explained:

---

[1] *Public Enemy No. 2*, New York Magazine, (available at http://nymag.com/news/intelligencer/flushable-wipes-2013-10/index1.html) (last visited April 10, 2015).
[2] Jenna Ross, *'Flushable' wipes can cost thousands to fix clogged pipes*, The Star Tribune, April 5, 2015 (available at http://www.startribune.com/local/298728221.html) (last visited April 15, 2015).

"Unfortunately, we have to do it all the time."[3]

27.     In Wadena, Minnesota, workers recently unclogged yet another blockage, a dirty mass largely comprised of wipes that would not break down. "They come out just like they go in…in one piece," said Dan Kovar, Wadena's Public Works director.  Each time a sewer backup happens, it requires a city crew to identify where the blockage is occurring. If it is in the city's pipes, crews and equipment are sent to clear the blockage. This costs the city and its taxpayer money.[4]  In March, Mr. Kovar posted a warning to the city's Facebook page: A wipe labeled "flushable," he explained, only means that it "will fit down the piping within your home."[5]

28.     The Association of Nonwoven Fabrics Industry (known as "INDA") is the powerful trade association representing (and lobbying on behalf of) the non-woven fabric industry, i.e., the Defendants.  The flushable wipes industry has experienced exceptional growth.  From 2008 to 2013, the sales of the moist flushable wipes grew 23 percent to $367 million. And some predictions call for the total market to continue to grow at a rate of 12.1% annually—to reach $2.4 billion by 2018.

29.     The INDA – without real input from the wastewater industry – has developed industry friendly standards a product must pass before it is appropriate for a manufacturer, distributor, or seller to make the claim that the product is flushable: (1)

---

[3] *Id.*

[4] Chelsey Perkins, *Disposable, flushable wipes wreaking havoc in Wadena sewers*, Brainerd Dispatch, March 27, 2015 (available at: http://www.brainerddispatch.com/news/3709654-disposable-flushable-wipes-wreaking-havoc-wadena-sewers) (last visited April 15, 2015).

[5] *Id.*

toilet and drainline clearance test; (2) slosh box disintegration test; (3) household pump

test; (4) settling test; (5) aerobic biodisintegration/biodegradation tests; (6) anaerobic

biodisintegration/biodegradation tests; and (7) municipal sewage pump test.

30.     However, wastewater officials say that the tests developed by the INDA do

***not*** simulate conditions in real-life sewer systems.[6] The "slosh box" test, for example,

requires that at least one-quarter of a wipe agitated in water be broken into pieces small

enough to pass through a small sieve within three hours. But wastewater officials say

wipes can reach a pump within a couple of minutes. Moreover, many sewer systems

move sewage primarily via gravity and are not nearly as hard on the wipes as the

agitation test.

31.     In Winter 2014, the Wisconsin Rural Water Association Journal published

an article about the havoc so called flushable wipes are wreaking on sewer systems and

the testing done by the flushable wipes industry (i.e., INDA) to support their claims.

32.     Chris Groh, a wastewater trainer for Wisconsin Rural Water Association,

wrote:

> If you ever have the time to look at one of these [Flushable
> Wipes], just try to tear it apart. Pretty hard to do by hand isn't
> it? If you do get one apart it looks kind of like they are made
> of a material similar to fishing line. Well, most are made of a
> type of plastic, they shred into long strings, don't pull apart at
> all and they don't dissolve.

---

[6] Katherine Shaver, *'Flushable' Personal Wipes Clogging Sewer Systems, Utilities Say*, The
Washington Post, Sept. 7, 2013 (available at
http://www.washingtonpost.com/local/trafficandcommuting/flushable-personal-wipes-clogging-
sewer-systems-utilities-say/2013/09/06/9efac4e6-157a-11e3-a2ec-b47e45e6f8ef_story.html) (last
visited April 10, 2015).

> The code that the manufacturer of these wipes uses basically says that after 3-hours of sloughing around in a collection system, if the material loses 25% of its mass they can call it "flushable." When they test these things they really move and beat the material around for 3 solid hours. Nothing like what you would find in your [sewer] collection system.  As operators we know that these wipes will plug pumps, shear apart and the resulting fibers will wrap around impellers or shafts (causing failures). And as they're not biodegradable they have to be removed from the treatment flow at the plant head-works.[7]

33.    Consumer Reports, an independent consumer publication that publishes reviews and comparisons of consumer products, performed its own independent disintegration test on flushable wipes that simulated toilet flushing conditions. A video clip of the test showed that standard toilet paper broke down in about eight seconds, but flushable wipes did not break down after ten minutes and, even more shocking, still did not break down after being placed in a Kitchen Aid mixer for the same period of time.[8]

34.    In 2012, as part of the World of Wipes Conference, Maureen Nunn, Senior Technical Service Specialist from the Dow Chemical Company, gave a presentation on "The Challenges and the Success" for the wipes industry.  Ms. Nunn is the primary technical point of contact in the Textiles and Nonwovens area of Dow Adhesives and Functional Materials.  Ms. Nunn acknowledged that "[a]s wipe use has increased, the

---

[7] Chris Groh, *Whatever Goes Down Must Come Up*, MRWA Today (Spring 2014) (available at http://www.mrwa.com/PDF/FlushablewipesChrisGrohspring2014.pdf) (last visited April 10, 2015).

[8] *See* Ed Perratore, *Think Twice About Flushing Wet Wipes*, Consumer Reports, Dec. 27, 2013, (available at http://www.consumerreports.org/cro/news/2013/12/think-twice-about-flushing-wet-wipes/index.htm) (last visited April 10, 2015).

industry has been challenged to continually improve product sustainability." Ms. Nunn noted that a key to sustainability is for the industry to "*develop a truly dispersible or 'flushable' wipe*."

35.     Two years later, at the 2014 World of Wipes Conference, Mutombo Muvundamina, Ph.D., Research Scientist, H.B. Fuller Company, gave a presentation to the industry on the binding agents and materials used in the so-called flushable wipes. Dr. Muvundamina's presentation recognized that **"**[n]umerous municipalities are alarmed by the high frequency of the clogging of wastewater conveyance systems and damages to pumps in their wastewater treatment facilities. Examinations of the causes of the blockage and damages to equipment point to wipes that are introduced into the wastewater stream as one of the main reasons for damage."

36.     State officials and local sewer authorities have implored the manufacturers and sellers of these purported flushable wipes to remove the flushability claims from their marketing and product packaging because these products are causing damage to sewer infrastructure all over the United States and the world.  These efforts have been largely rebuffed by the industry.

37.     In New York City, a bill was introduced in February 2015 to stop wipe companies from advertising their products as flushable. The city's environmental staff has also begun a public awareness campaign to inform residents that they should be throwing wipes in the trash – not in the toilet, even though the wipes are advertised as "flushable."

38.     Vinny Sapienza, the Deputy Commissioner of New York City's

12

Department of Environmental Protection, explained that New York City's sewer system is inundated with wipes and the "wipes are costing tax payers an additional $3 million a year to clean out." Over the past five to six years, New York City has spent over $18 million to have these wipes removed by hand from the sewer system.

39.     Sapienza warned that just because a box of wipes is labeled "flushable" doesn't mean it breaks down in the pipes like toilet paper. "It's really their [(the Defendants')] industry organization [(INDA)] that came up with the term flushable," Sapienza said.[9]

40.     Beloit, Wisconsin, has launched a "no wipes down the pipes" campaign. Unless it's toilet paper, the municipality says, it should not be flushed. According to the city:

> Wipes, cloths, and rags are being found in sanitary sewers at an ever increasing rate. Many of these products are labeled as flushable, but while they may clear the toilet, they will most likely cause problems downstream. These products are becoming notorious for blocking private sewer laterals, public sewer mains, and binding up municipal pumps.

41.     According to the National Association of Clean Water Agencies (NACWA)—a trade association that represents the interests of nearly 300 publicly owned wastewater treatment agencies nationwide—over the past few years cities across the country have incurred hundreds of thousands of dollars in new equipment and maintenance costs to repair damage resulting from flushed wipes, and in some cases

---

[9] Renee Stoll, *'Flushable' Wipes Clogging Up Sewer System in New York City*, WABC-TV New York, Feb. 12, 2015 (available at http://7online.com/news/flushable-wipes-clogging-up-sewer-system-in-new-york-city/515058/) (last visited April 10, 2015).

even more, including:

(a)     The Orange County Sanitation District spent $2.4 million on new equipment to unclog its pumps.

(b)     The Washington Suburban Sanitary Commission, which handles sewage for the residents of Montgomery and Prince George's Counties in Maryland, spent more than $1 million to install heavy-duty grinders to shred wipes before they reach pumps on the way to the treatment plant.  The District's water and sewer agency say that more than 500 man-hours have been devoted over the past 12 months to removing stuck wipes and repairing broken equipment.

(c)     Aurora Water, in Aurora, Colorado just recently found and removed flushable wipes that caused a clog in a sewer main, which resulted in toilet backups on the entire block serviced by that main pipe. It was the second time in 2014 that wipes were removed from the public sewer system because they created clogs.

(d)     Metro Wastewater Reclamation District in metro Denver has large interceptors that trap wipes and other non-organic debris, costing the district about $100,000 annually to remove the wipes and other debris.

(e)     Flushable wipes clogged a section of the public sewer system in Grand Rapids, Michigan, causing the city to send out mailers to its citizens asking them not to flush any wipes, even those marketed as flushable.

(f)     Over the past five to six years, New York City's Department of Environmental Protection has spent over $18 million removing wipes by hand from its sewer system and machinery at the wastewater treatment plant.

(g)     Raleigh, North Carolina is increasingly dealing with clogged sewer lines, due mainly to wipes, which can stick to the sides of pipes.

(h)     In San Antonio, Texas, crews remove three to five tons of debris per day.

42.     Examples outside the United States are illustrative, as well. In Canada, wipes cause treatment plants about $250 million annually in repairs. In 2013, in London, there was a 15-ton, bus-sized clog in a sewer main from wipes and coagulated grease that took three weeks to dislodge and six weeks to repair the damage to the pipes.

43.     Despite Defendants' knowledge of this and the need to reduce wear and tear on the country's sewer systems[10], they continue to market these wipes as "flushable" and safe for sewer systems.  Indeed, when faced with questions about the damage caused to various sewer authorities, Defendant Kimberly-Clark claimed, in a July 2013 newspaper article, that "if the company labels a product as flushable, it stands by that" and it remains "confident in th[e] claim [of flushability]."[11]

44.     Below are photographs of so called flushable wipes intact after flushing and reaching wastewater treatment facilities.

---

[10] *Id*.

[11] Andrea Koskey, *Flushable Wipes Cause Problematic Backups at Local Sewage Plants*, The Examiner, July 18, 2013 (available at http://www.sfexaminer.com/sanfrancisco/flushable-wipes-cause-problematic-backups-at-local-sewage-plants/Content?oid=2514283) (last visited April 20, 2015).







C.  **Defendants' Flushable Claims**

**P&G Flushable Wipes**

45.     Defendant P&G owns both the Charmin and Pampers lines, including their

flushable wipes. The Pampers brand possesses a global market share of 30% and

Charmin has 25% of the U.S. market share.

46.     Charmin's website advertises the flushability of their Charmin Freshmates

and the product label clearly states "flushable wipes" (see below).



47.    P&G also provides a Clog Safe/Septic Safe money back guarantee for the bath tissue only. This guarantee, however, does not extend to the flushable wipes.

48.    The product name and packaging for the Pampers Kandoo Flushable Wipes state that these are "flushable wipes" (see below).



49.    Reviews on the Pampers Kandoo website mention that the wipes are "not so flushable."

**Kimberly-Clark Flushable Wipes**

50.    Defendant Kimberly-Clark makes several types of flushable wipes under the Cottonelle brand—Cottonelle Fresh Care Flushable Wipes & Cleansing Cloths, Cottonelle Gentle Care Flushable Cleansing Cloths with Aloe & E, Cottonelle Fresh Folded Wipes, and Cottonelle Soothing Clean Flushable Moist Wipes with Aloe.

51.    On the Cottonelle website, Defendant Kimberly-Clark markets these

products to the public, describing its Cottonelle Fresh Care Flushable Cleansing Cloths

as "using a patented dispersible technology, which means that when used as directed

they break up after flushing and clear properly maintained toilets, drainlines, sewers,

pumps, and septic and municipal treatment systems."

52.     On the Cottonelle website, where it markets these products to the public, in

a section titled "About this item," Kimberly-Clark makes the following guarantees or

representations: (1) Our Fresh Care Flushable Cleansing Cloths feature SafeFlush

Technology™, so they not only offer you a confident clean but also *start to break down*

*immediately after flushing* (emphasis added); and (2) Cottonelle Flushable Cleansing

Cloths use a patented dispersible technology that allows them to lose strength and break

up after flushing.

53.     The product page on the Cottonelle website also contains a list of

Frequently Asked Questions, including "How can I be sure it is safe to flush Cottonelle

Flushable Cleansing Cloths?" and "Will Cottonelle Flushable Cleansing Cloths break

down in my septic system?"  The answers state that the flushability of Kimberly-Clark

products is tested according to "trade association guidelines," and that the guideline tests

demonstrate that when used as directed, the wipes clear properly maintained toilets,

drainlines, sewers, and pumps.

54.     On the product packaging for the Cottonelle Fresh Care Flushable

Cleansing Cloths, the phrase "flushable cleansing cloths" is displayed prominently. Also

appearing on the front of the product's package is a logo guaranteeing the wipes to be

"SEWER AND SEPTIC SAFE" (see below).





55.     On the back of the product packaging for the Cottonelle Fresh Care

Flushable Cleansing Cloths, Kimberly-Clark states, represents, and guarantees that

"COTTONELLE FRESH CARE Flushable Cleansing Cloths break up after flushing"

(see below).





56.    On the product packaging for Cottonelle Fresh Care Flushable Moist Wipes, Kimberly-Clark represents, states, and guarantees, "Safe for sewer and septic systems" and "you can flush Cottonelle Fresh Care wipes with confidence because they break up like toilet paper after flushing." This packaging also displays a circular logo representing, stating, and guaranteeing that this wipe product "BREAKS UP AFTER FLUSHING" (see below).







57.     On the product packaging for the Cottonelle Ultra Comfort Care Flushable
Cleansing Cloths the phrase "flushable cleansing cloths" is displayed prominently. Also
appearing on the front of the product's package is a logo stating the wipes are
manufactured using "SAFE FLUSH TECHNOLOGY," representing to consumers that
these wipes "break up after flushing and are sewer and septic safe" (see below).





58.     The side panels on the product packaging for the Cottonelle Ultra Comfort

Care Flushable Cleansing Cloths include the SAFE FLUSH TECHNOOLGY logo and a

representation, statement and guarantee that "Safe Flush Technology ensures that

Cottonelle Ultra Comfort Care Flushable Cleansing Cloths break up after flushing, and

are sewer and septic safe" (see below).



59.     Kimberly-Clark makes several types of flushable wipes under the Scott Naturals brand—Scott Naturals Flushable Moist Wipes, Scott Naturals Flushable Moist Wipes with Aloe Vera, and Scott Naturals Folded Flushable Moist Wipes.

60.     The flushable wipes claim to be "flushable" both in the product name and on the label.  The label also has a logo for its SafeFlush Technology™ (see below).



61.    The product webpage plays up the environmental soundness of the product, including "Clean with a conscience," "Scott Naturals Flushable Cleansing Cloths help you get clean and put a green step in your routine," and "The quality is so good your family won't notice the difference.  But the environment will."

62.    Kimberly-Clark makes and sells a variety of other flushable wipes, including Pull-Ups Big Kid Flushable Wipes, U by Kotex Refresh Wipes, and Poise Intimate Cleansing Cloths. The Pull-Ups and Kotex product labels and the website pages for these products claim that the wipes are "flushable."  In fact, the Pull-Ups website specifically states that the wipes are "sewer and septic safe and break up quickly after flushing." Poise Intimate Cleansing Cloths also state on its website that they are "individually wrapped and flushable for on the go convenience."

**Nice-Pak Flushable Wipes**

63.    Defendant Nice-Pak designs, makes, markets, and sells flushable wipes under its Nice 'n Clean brand.  The Nice 'n Clean product label is clearly advertised as "flushable" (see below).



64.     Nice n' Clean's flushable wipes are described as "The Flush Friendly wipe" that is made with EcoFlush™ technology that makes its wipes "safe for all well maintained sewers and septic systems."

65.     Nice-Pak also manufactures wipes for Costco's private label Kirkland Signature Brand.  Kirkland Signature Moist Flushable Wipes are marketed by Defendant Costco. In 2014, Costco reported global net sales of over $110 billion, of which 25% came from Kirkland Signature products. Both the product name and the label of Kirkland Signature's Moist Flushable Wipes state that the wipes are flushable.  The label also has an icon stating that the wipes are "made with EcoFlush™ technology," and states that the product is "safe for well-maintained sewer & septics" (see below).



66.    "New EcoFlush technology uses streams of water to 'entangle' the fibers and then the fibers untangle with agitation common in consumer and municipal sewer systems.  This technology means you can feel confident flushing them one wipe at a



time."

67.    One of the Frequently Asked Questions on the webpage states "Are Kirkland Signature Moist Flushable Wipes really flushable?"  Costco's answer is "Yes, Kirkland Signature™ Moist Flushable Wipes comply with industry guidelines and are

designed to ensure that they will pass through a home's well-maintained toilet, pump and drain line without clogging."

68.     Another FAQ addresses the "dos and dont's" for flushing, and warns customers to only flush one at a time, to ensure there are no tree roots growing into the sewer lines, and to make sure the septic system is well maintained.

69.     When asked how it is possible to know if a wipe is flushable, Costco instructs consumers to "Look for the Do Not Flush logo that is starting to appear on many products that are not flushable or read the directions on the package on how to dispose of properly."

70.     In a field study performed in Vancouver, Washington, Kirkland wipes were dyed red.  After 45 minutes in the sewer system, the wipes failed to disperse or degrade as evidenced by the photo below.



71.     Nice-Pak also manufactures and supplies CVS with flushable wipes for CVS' brand flushable wipes.  CVS' 2013 Annual Report claims $126.8 billion in net revenues, of this its front store sales/over the counter products was estimated to be a $15

billion market, with 9% market share.  CVS's store and proprietary brands accounted for 17.8% of front store sales.

72.    CVS/pharmacy makes, markets, advertises, and sells a house brand of Flushable Cleansing Wipes.  Both the product name and label advertise flushability (see below). The webpage states that the wipes "Break[] apart when flushed," and are "safe for sewer and septic systems."



73.    CVS also sells a Total Home by CVS Flushable Moist Wipes Refill (see below). CVS' webpage states the Total Home wipes are comparable to Cottonelle Fresh Care Wipes, "safe for most sewers and septics," and "break[] apart when flushed."



74.    Nice-Pak also manufactures and supplies Target with flushable wipes for

Target's Up & Up brand flushable wipes. Target's Up & Up brand Toddler Wipes and its

Flushable Moist Wipes product labels state that the wipes are flushable (see below).





**PDI Flushable Wipes**

75.    Defendant PDI designs, manufactures, and sells flushable wipes under its Hygea brand.  The product label clearly states that the wipes are "flushable" (see below). PDI's website describes its Hygea Flushable Personal Cleansing Cloths as a "safe for sewers and septic systems."



**Tufco Flushable Wipes**

76.    Defendant Tufco manufactures and packages private label flushable wipes throughout the United States.  On its website, Tufco markets itself as "the personal care wipes manufacturer leader" and clearly advertises "flushable" wipes for its consumers.

**Rockline Flushable Wipes**

77.    Defendant Rockline designs, manufactures, and supplies private label consumer products, including flushable wipes to retailers throughout the world. Rockline offers contract manufacturing for Walmart, among others retailers.   Rockline contracts with Walmart to manufacture and package Walmart's Equate brand of

flushable wipes.

78.    On the product packaging for the Equate Fresh Scent Flushable Wipes, the phrase "Flushable Wipes" is displayed prominently. Also appearing on the package is a logo guaranteeing the wipe, "BREAKS APART AFTER FLUSHING" (see below).





79.    On the back of the product packaging for Equate Fresh Scent Flushable Wipes, there are various guarantees and representations that the wipes are "flushable" and safe to be disposed of through a consumer's home plumbing system.  One such guarantee or representation states, "Certified Flushable," and "Suitable for Sewer and Septic." Another guarantee or statement appearing on the back of the product packaging states, "Safe for properly maintained sewer & septic" (see below).



80.    Also on the back of the packaging for the Equate Fresh Scent Flushable Wipes is the following guarantee or representation, "Better than dry tissue alone. Contains soothing Aloe & Vitamin E. Equate Flushable Wipes break apart after flushing, reducing the chance for blockages at home and in waste management systems. More than 95% biodegradable and made with 95% renewable resources.  Our unique material is gentle on the environment" (see below).



81.    Equate also markets a line of Feminine Wipes, marketed as Flushable, and

comparable to Always Feminine Wipes.  Nowhere in the marketing of or on the

packaging for Equate flushable wipes have Defendants provided a warning to consumers

that flushing these flushable wipes could cause problems to sewer systems.

**D.      Allegations Related to the Named Plaintiff**

82.      Flushable wipes have caused significant problems for Plaintiff, City of

Wyoming.

83.      Flushable wipes clog Plaintiff's lift stations, generally.  As a result of the

repeated clogs, Plaintiff's lift stations have had mechanical damage and Plaintiff has

been forced to hire an outside sewer repair company to vacuum out the system's pipes

every few months.

84.      Plaintiff has 13 lift stations.  Presently, three are in need of repair due to

the impact that wipes have had on the system. Plaintiff maintains logs that detail its

ongoing problems with wipes.

85.      Plaintiff believes that if the flushable wipes were designed to degrade,

similar to traditional toilet paper, the sewer industry would no longer be faced with the

rapid spike in operating and repair expenses caused directly by the alleged flushable

wipes.

## CLASS ACTION ALLEGATIONS

86.      Plaintiff brings this action as a class action under Federal Rule of Civil

Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of itself and all others similarly

situated.  Plaintiff seeks to represent a Rule 23(b)(2) class initially defined as:

All entities in the United States that own, manage, or operate

wastewater treatment systems (the "Nationwide Equitable
Relief Class").

87.    Plaintiff also seeks to represent a Minnesota State Sub-Class under Federal

Rule of Civil Procedure Rule 23(b)(2) and (3) initially defined as:

> All entities in the State of Minnesota that suffered damage
> resulting from flushable wipes in the sewer or wastewater
> treatment system (the "State Sub-Class").

88.    Excluded from the Nationwide Equitable Relief Class and the State Sub-

Class are Defendants, their employees, officers, directors, legal representatives, heirs,

successors, and wholly or partly owned subsidiaries, any individuals who experienced

physical injuries as a results of the defects at issue in this litigation, and the judge and

court staff to whom this case is assigned.  Plaintiff reserves the right to amend the

definition of the Classes if discovery or further investigation reveals that the class should

be expanded or otherwise modified.

**Numerosity and Ascertainability**

89.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1).  Plaintiff

is informed and believes that there are hundreds, if not thousands, of municipalities,

counties, or other entities both nationwide and in Minnesota that have experienced

damages caused by flushable wipes. Individual joinder of all Class Members is

impracticable.

90.    Each of the Classes is ascertainable because its members can be readily

identified using public information.  Plaintiff anticipates providing appropriate notice to

each certified Class, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be

approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

## Predominance and Commonality

91.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers that are the same for each of the respective Classes predominate over questions affecting only individual Class Members.  These include, without limitation, the following:

(a)    Whether Defendants' flushable wipes are degradable;

(b)    Whether Defendants' flushable wipes are sewer system safe;

(c)    Whether Defendants knew or reasonably should have known that their flushable wipes were not degradable prior to distributing the wipes as such;

(d)    Whether Defendants have refused to cease marketing their flushable wipes as degradable and sewer system safe in the face of repeated complaints regarding sewer clogs caused by wipes;

(e)    Whether Defendants should be enjoined from marketing their flushable wipes; and

(f)    Whether the State Sub-Class is entitled to damages caused by Defendants' representations that their wipes were flushable, degradable and sewer system safe.

## Typicality

92.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of the Class members, and arise from the same course of conduct by Defendants.  The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

**Adequate Representation**

93.     Plaintiff will fairly and adequately represent and protect the interests of the

Classes.  Plaintiff has retained counsel with substantial experience in prosecuting

complex class action.

94.     Plaintiff and its counsel are committed to vigorously prosecuting this

action on behalf of the Classes, and have the financial resources to do so.  Neither

Plaintiff nor its counsel have interests adverse to those of the Classes.

**Superiority**

95.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1) because

the prosecution of separate actions by the individual Class members on the claims

asserted herein would create a risk of inconsistent or varying adjudications for individual

Class members, which would establish incompatible standards of conduct for

Defendants; and because adjudication with respect to individual Class members would,

as a practical matter, be dispositive of the interests of other Class members, or impair

substantially or impede their ability to protect their interests.

96.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because

Defendants have acted and refused to act on grounds generally applicable to each Class,

thereby making appropriate final injunctive and/or corresponding declaratory relief with

respect to each Class as a whole.

97.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a

class action is superior to other available methods for the fair and efficient adjudication

of this controversy.  The common questions of law and fact regarding Defendants'

conduct and responsibility predominate over any questions affecting only individual Class members.

98.    The burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

99.    The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation.  Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

100.    Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.  The Court may, on motion of Plaintiff or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

101.    The undersigned counsel for Plaintiff and the Class request that this Court appoint them to serve as Class counsel; first on an interim basis and then on a permanent basis pursuant to Federal Rules of Civil Procedure 23(g). Undersigned counsel will fairly and adequately represent the interests of the Class, have identified or investigated the Class' potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in this action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Declaratory Judgment Act**
**28 U.S.C. § 2201 and Fed. R. Civ. P. 57**
**(On Behalf of Nationwide Rule 23(b)(2) Class)**

102.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

103.    Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2751 (3d ed. 1998).

104.    There is an actual controversy between Defendants and Plaintiff concerning: (1) whether their flushable wipes are sewer system safe; (2) whether their flushable wipes degrade when placed in the sewer system; (3) whether Defendants performed adequate testing to determine whether their wipes were in fact flushable; (4) whether Defendants should be permitted to continue to market and sell their wipes as

flushable in the face of ongoing and repeated clogs of sewer systems; and (5) whether

Defendants should have to remediate the ongoing clogs in public sewer systems caused

by the failure of their "flushable" wipes to degrade and disperse.

105.    Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal

relations of any interested party seeking such declaration, whether or not further relief is

or could be sought."

106.    Because Defendants have refused to act, and in the face of ongoing and

continuing harm, Plaintiff seeks a declaration that the Defendants' flushable wipes are

not in fact flushable, do not degrade, and cause harm to sewer systems.  Plaintiff seeks

the equitable relief of remediation for the ongoing clogs it continues to endure.

**SECOND CLAIM FOR RELIEF**
**Violation of Minnesota Stat. § 336.2-313, *et seq.***
**Breach of Express Warranty**
**(On Behalf of a State Law Rule 23(b)(3) Sub-Class)**

107.    Plaintiff hereby incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint.

108.    Plaintiff and members of the State Sub-Class are persons as defined under

Minnesota Stat. § 336.1-201(27).

109.    Pursuant to Minnesota Stat. § 336.2-313(1), Defendants created an express

warranty with the uniform affirmation on the label that the wipes were "Flushable."

Defendants further described the wipes as "degradable" and "sewer and septic system

safe."

110.    This express warranty was breached by Defendants because the wipes were

40

not "Flushable," "degradable," or "sewer and septic system safe."

111.    This express warranty extends to Plaintiff and members of the State Sub-
Class as a "person who may reasonably be expected to use, consume or be affected by
the goods and who is injured by the breach of the warranty." Minnesota Stat. § 336.2-
318.

112.    Plaintiff and the State Sub-Class, as the operators of sewer system and
wastewater treatment facilities, could reasonably expect to be affected by the wipes and
the breach of Defendants' express warranty that the wipes were "flushable," degradable,"
or "sewer and septic system safe."

113.    Defendants' flushable wipes do not, in fact, conform to their warranties as
flushable, degradable and septic system safe.

114.    As a direct and foreseeable result of this breach, Plaintiff and the State
Sub-Class have suffered injury.

<u>**THIRD CLAIM FOR RELIEF**</u>
**Violation of Minnesota Stat. § 336.2-314.**
**Breach of Implied Warranty of Merchantability**
<u>(On Behalf of a State Law Rule 23(b)(3) Sub-Class)</u>

115.    Plaintiff hereby incorporates by reference the allegations contained in the
preceding paragraphs of this Complaint.

116.    Plaintiff and members of the State Sub-Class are persons as defined under
Minnesota Stat. § 336.1-201(27).

117.    Defendants are merchants under Minn. Stat. § 336.2-314.

118.    Pursuant to Minnesota Stat. § 336.2-314, Defendants warrant the flushable

wipes were merchantable, when they were not. Defendants' flushable wipes do not conform to the promises or affirmations of fact made on the container or label as required under Minnesota law. Minn. Stat.§336.2-314(2)(f). Defendants' flushable wipes are also not fit for the ordinary purposes for which they were to be used because they are not flushable. See Minn. Stat. §336.2-314(2)(c).

119.    This implied warranty extends to Plaintiff and members of the State Sub-Class as a "person who may reasonably be expected to use, consume or be affected by the goods and who is injured by the breach of the warranty." Minnesota Stat. § 336.2-318.

120.    Plaintiff and the State Sub-Class, as the operators of sewer system and wastewater treatment facilities, could reasonably expect to be affected by the wipes and the breach of Defendants' express warranty that the wipes were "flushable," degradable," or "sewer and septic system safe."

121.    Defendants' breached these implied warranties because their flushable wipes do not, in fact, conform to their warranties as flushable, degradable and septic system safe.

122.    As a direct and foreseeable result of this breach, Plaintiff and the State Sub-Class have suffered injury.

**FOURTH CLAIM FOR RELIEF**
**Violation of Minnesota Stat. § 336.2-315.**
**Breach of Implied Warranty of Fitness for a Particular Purpose**
(On Behalf of a State Law Rule 23(b)(3) Sub-Class)

123.    Plaintiff hereby incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint.

124.    Plaintiff and members of the State Sub-Class are persons as defined under Minnesota Stat. § 336.1-201(27).

125.    Pursuant to Minnesota Stat. § 336.2-315, Defendants warrant the flushable wipes were flushable, and therefore suitable to be flushed by the consumer, when they were not.  Defendants sought to distinguish these wipes as "flushable," degradable," or "sewer and septic system safe."

126.    This implied warranty extends to Plaintiff and members of the State Sub-Class as a "person who may reasonably be expected to use, consume or be affected by the goods and who is injured by the breach of the warranty." Minnesota Stat. § 336.2-318.

127.    Plaintiff and the State Sub-Class, as the operators of sewer system and wastewater treatment facilities, could reasonably expect to be affected by the wipes and the breach of Defendants' express warranty that the wipes were "flushable," degradable," or "sewer and septic system safe."

128.    Defendants' flushable wipes do not, in fact, conform to their warranties as flushable, degradable and septic system safe.

129.    As a direct and foreseeable result of this breach, Plaintiff and the State Sub-Class have suffered injury.

**FIFTH CLAIM FOR RELIEF**
**Minnesota Stat. § 8.31, subd. 3a *et seq.***
**Violation of Unlawful Trade Practices Act (§§ 325D.09 – 325D.16)**
**(On Behalf of a State Law Rule 23(b)(3) Sub-Class)**

130.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

131.    Minnesota Statute § 8.31, subdivision 3a, provides: "any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements…reasonable attorneys' fees, and receive other equitable relief as determined by the court."

132.    Subdivision 1 includes the Unlawful Trade Practices Act, which states: "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."  Minn. Stat. § 325D.13.

133.    Defendants, in connection with the sale of their "flushable wipes," have knowingly misrepresented their true quality as flushable, degradable, and sewer system safe.

134.    Defendants' false and misleading representations of fact and conduct have deceived or misled, or have a tendency to deceive or mislead, a substantial and appreciable segment of consumers.

135.    Upon information and belief, Defendants' false and misleading representations of fact and conduct have influenced purchasing decisions and have caused consumers to place flushable wipes into the sewer system resulting directly in harm and injury to Plaintiff and the State Sub-Class.

136.    By reason of Defendants' false and misleading representations of fact and

44

conduct, Plaintiff and the State Sub-Class have suffered and will continue to suffer damages.

137.    In addition to monetary damages, costs, disbursements, and reasonable attorneys' fees, Plaintiff is entitled to enjoin Defendants' unlawful conduct in knowingly and falsely representing its flushable wipes as sewer system safe.

### SIXTH CLAIM FOR RELIEF
### Minnesota Stat. § 8.31, subd. 3a *et seq.*
### Violation of the Minnesota False Advertising Act (§§ 325F.67)
### (On Behalf of a State Law Rule 23(b)(3) Sub-Class)

138.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

139.    Minnesota Statute § 8.31, subdivision 3a, provides: "any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements…reasonable attorneys' fees, and receive other equitable relief as determined by the court."

140.    Subdivision 1 includes Minn. Stat. § 325F.67, which provides that:

> Any person, firm, corporation, or association who, with intent to sell…merchandise… directly or indirectly, to the public, for sale or distribution, or with intent to increase the consumption thereof…makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, or in any other way, an advertisement of any sort regarding merchandise… for use, consumption, purchase, or sale, which advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or

other specific damage to any person occurs as a direct result thereof…any such act is declared to be a public nuisance and may be enjoined as such.

141.    Through their marketing and advertising, Defendants have intentionally and willfully made, published, disseminated, circulated and placed before the public advertisements containing, false, deceptive and misleading material statements about their "flushable wipes" being flushable, degradable, and sewer system safe.  Defendants' conduct is tantamount to a public nuisance because it caused significant damage to the public sewer systems.

142.    By reason of the Defendants' conduct, Plaintiff and the State Sub-Class have suffered and will continue to suffer damages to their business.

143.    Plaintiff is entitled to enjoin Defendants' unlawful conduct as well as damages, costs and disbursements, and reasonable attorneys' fees.

## SEVENTH CLAIM FOR RELIEF
### Minnesota Stat. § 8.31, subd. 3a *et seq.*
### Violation of the Minnesota Prevention of Consumer Fraud Act (§§ 325F.69)
### (On Behalf of a State Law Rule 23(b)(3) Sub-Class)

144.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

145.    Minnesota Statute § 8.31, subdivision 3a, provides: "any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements…reasonable attorneys' fees, and receive other equitable relief as determined by the court."

146.    Subdivision 1 includes Minn. Stat. § 325F.69, which provides that:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable.

147.    Through their marketing and advertising, Defendants have misrepresented that their "flushable wipes" are in fact flushable, degradable, and sewer system safe with the intent that consumers rely on that representation.  The evidence of reliance is demonstrated by the fact that consumers do, in fact, flush the wipes into the toilet causing damage to the sewer system.

148.    By reason of the Defendants' conduct, Plaintiff and the State Sub-Class have suffered and will continue to suffer damages to their business.

149.    Plaintiff is entitled to enjoin Defendants' unlawful conduct as well as damages, costs and disbursements, and reasonable attorneys' fees.

## EIGHTH CLAIM FOR RELIEF
### Violation of the Minnesota Uniform Deceptive Trade Practices Act
### (Minn. Stat. §§ 325D.44)
### (On Behalf of a State Law Rule 23(b)(2) Sub-Class)

150.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

151.    Minn. Stat. § 325D.44, subd. 1, provides that:

A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

* * *

> (5)  represents that goods or services have…characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship,

approval, status, affiliation, or connection that the person does not have;

* * *

(7)  represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; or

* * *

(13)  engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

152.    Minn. Stat. §325D.45 provides a private right of action to enforce the provisions of Minn. Stat. §325D.44 to "a person likely to be damaged by a deceptive trade practice."

153.    Defendants have misrepresented—and continue to misrepresent—that their "flushable wipes" are in fact flushable, degradable, and sewer system safe in violation of §325D.44.

154.    By reason of the Defendants' conduct, Plaintiff and the State Sub-Class have suffered and will continue to suffer damages to their business.

155.    Plaintiff is entitled to enjoin Defendants' unlawful conduct as well as costs and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of itself and all others similarly situated, prays for judgment as follows:

A.    An order certifying the proposed Rule 23(b)(2) and (b)(3) Classes and designating Plaintiff as the named representative of the Classes, and designating the undersigned as Class Counsel;

B.    A declaration that the Defendants' flushable wipes do not degrade and are not sewer safe;

C.      An order enjoining Defendants to desist from further advertising, sale and distribution of said "flushable wipes";

D.      An order requiring the Defendants to establish a fund to compensate Plaintiff and the Class for the cost associated with ongoing clean-up and removal of flushable wipes from their sewer systems;

E.      An award to Plaintiff and the Rule 23(b)(3) Class members all available damages allowed for by law, including interest, in an amount to be proven at trial;

F.      An award of attorneys' fees and costs;

G.      An award of pre-judgment and post-judgment interest, as provided by law; and

H.      Leave to amend this Complaint to conform to the evidence produced at trial; and such other relief as may be appropriate under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff requests a jury trial as to all issues triable by a jury.

Respectfully submitted,

DATE:  April 23, 2015      by: <u>s/Daniel E. Gustafson</u>
Daniel E. Gustafson (#202241)
Jason S. Kilene (#024773X)
Sara J. Payne (#0389253)
Lucy G. Massopust (#0393254)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
jkilene@gustafsongluek.com
spayne@gustafsongluek.com
lmassopust@gustafsongluek.com

49

Simon B. Paris
Patrick Howard
Charles J. Kocher
**SALTZ, MONGELUZZI, BARRETT
& BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA  19103
Telephone: (215) 496-8282
Facsimile: (215) 496-0999
sparis@smbb.com
phoward@smbb.com
ckocher@smbb.com


Mark Reinhardt (#90530)
Garrett D. Blanchfield (#209855)
Roberta A. Yard (#322295)
**REINHARDT, WENDORF &
BLANCHFIELD**
E 1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Phone : (651) 287-2100
Fax : (651) 287-2103
m.reinhardt@rwblawfirm.com
g.blanchfield@rwblawfirm.com
r.yard@rwblawfirm.com


Kenneth A. Wexler
Edward A. Wallace
Mark R. Miller
**WEXLER WALLACE LLP**
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Tel : (312) 346-2222
Fax : (312) 346-0022
kaw@wexlerwallace.com
eaw@wexlerwallace.com
mrm@wexlerwallace.com

Steven N. Williams
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel : (650) 697-6000
Fax : (650) 697-0577
swilliams@cpmlegal.com

**Attorneys for Plaintiff and Proposed Classes**