# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| CITY OF WYOMING, CITY OF MANKATO, CHISAGO LAKES JOINT SEWAGE TREATMENT COMMISSION, SAUK CENTRE PUBLIC UTILITIES COMMISSION, VILLAGE OF HOLMEN, CITY OF FERGUS FALLS, CITY OF ELK RIVER, and CITY OF PRINCETON, | Civil No. 15-2101 (JRT/TNL) |

Plaintiffs,

v.

PROCTER & GAMBLE COMPANY,
KIMBERLY-CLARK CORPORATION,
NICE-PAK PRODUCTS, INC., PROFESSIONAL
DISPOSABLES INTERNATIONAL, INC.,
TUFCO TECHNOLOGIES INC., and
ROCKLINE INDUSTRIES,

Defendants.

**MEMORANDUM OPINION
AND ORDER ON MOTIONS
TO DISMISS**

Daniel E. Gustafson, **GUSTAFSON GLUEK PLLC**, 120 South Sixth Street, Suite 2600, Minneapolis, MN 55402; Simon Bahne Paris, **SALTZ, MONGELUZZI, BARRETT & BENDESKY, PC**, 1650 Market Street, Fifty-Second Floor, Philadelphia, PA 19103; and Kristin J. Moody, **BERMAN DEVALERIO**, One California Street, Suite 900, San Francisco, CA 94111, for plaintiffs.

Emily Johnson Henn, **COVINGTON & BURLING LLP**, 333 Twin Dolphin Drive, Suite 700, Redwood Shores, CA 94065, and Nicole M. Moen, **FREDRIKSON & BYRON, PA**, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for defendant Procter & Gamble Company.

Kara L. McCall, **SIDLEY AUSTIN LLP**, One South Dearborn, Suite 3300, Chicago, IL 60603, and Tracy J. Van Steenburgh, **NILAN JOHNSON LEWIS PA**, 120 South Sixth Street, Suite 400, Minneapolis, MN 55402, for defendant Kimberly-Clark Corporation.

Karl A. Bekeny and Michael J. Ruttinger, **TUCKER ELLIS LLP**, 950 Main Avenue, Suite 1100, Cleveland, OH  44113, for defendants Nice-Pak Products, Inc., and Professional Disposables International, Inc.

Aaron D. Van Oort, **FAEGRE BAKER DANIELS LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN  55402, and Jason Heinz Anderson, **STRADLING YOCCA CARLSON & RAUTH P.C.,** 660 Newport Center Drive, Suite 1600, Newport Beach, CA  92660, for defendant Tufco Technologies Inc.

Jerry W. Blackwell and S. Jamal Faleel, **BLACKWELL BURKE PA**, 431 South Seventh Street, Suite 2500, Minneapolis, MN  55415, for defendant Rockline Industries.

Hygienic wipes labeled and sold as "flushable" have caused and are continuing to cause increased costs and property damage to the governmental entities that operate sewer systems and water treatment facilities.  These "flushable" wipes do not break down like toilet paper – or at least not all of them do – and as a result, they end their life at the tail end of the sewer line, clogging up sewer-system facilities.  Those are the allegations of the Plaintiffs in this case, all of whom are municipalities in Minnesota and Wisconsin seeking relief for the costs and property damage they say they have suffered due to flushable wipes.   The crux of their complaint is that Defendants – the major manufacturers of flushable wipes – all represented to consumers and the public that their flushable wipes were literally "flushable," when they were not.

The complication is that Plaintiffs' complaint attempts to shoehorn a novel set of facts into a rather traditional set of claims.  For example, Plaintiffs allege traditional warranty claims even though they are not traditional warranty plaintiffs, and they allege

various consumer protection claims even though they are not consumers of flushable wipes.

Defendants have filed motions to dismiss, arguing that Plaintiffs' attempted innovations go too far.  The Court agrees with Defendants that some of Plaintiffs' claims cannot succeed – Plaintiffs' Declaratory Judgment Act claim is not a true Declaratory Judgment Act claim and Plaintiffs have not pleaded facts suggesting Defendants ever made a warranty for a particular purpose.  But on the rest of the warranty and consumer protection-related claims, the Court finds that Plaintiffs have stated a claim, in large part because, at least for the purposes of this motion to dismiss, Plaintiffs have thoroughly reviewed the products they allege to cause and to have caused them harm, and also because Minnesota's warranty law and consumer protections statutes extend to those who could be reasonably expected to suffer an injury for applicable violations.  The Court will therefore grant in part and deny in part Defendants' motion to dismiss.

Defendant Tufco Technologies, Inc. ("Tufco") has also filed its own motion to dismiss, highlighting the relatively sparse attention devoted to Tufco in Plaintiffs' complaint.  While Tufco's arguments are stronger than the other defendants', the Court finds that Plaintiffs have nonetheless stated a claim against Tufco with respect to six of their claims by alleging that Tufco represented to its customers directly and to all visitors to its website that it manufactured "flushable" wipes.  But Wisconsin's Tort Reform Act heightened the bar for plaintiffs pursuing Wisconsin claims, and Plaintiffs' Wisconsin claims against Tufco – unlike Defendants generally – do not include allegations about

specific Tufco products.  The Court will therefore grant in part and deny in part Tufco's motion as well.

## BACKGROUND

## I.    FACTUAL BACKGROUND

Plaintiffs are municipalities located in Minnesota and Wisconsin, all of whom operate "lift stations" that pump wastewater to water treatment facilities.  (Am. Compl. ¶¶ 6-14, Aug. 10, 2015, Docket No. 61.)

Defendants are all foreign corporations that manufacture and sell wipes that are labeled as "flushable."  (*Id.* ¶¶ 15-20.)  Defendant Procter & Gamble Co. ("P&G") "manufactures, distributes, markets, and sells a variety of flushable wipes worldwide," as does Defendant Kimberly-Clark Corp. ("Kimberly-Clark").  (*Id.* ¶¶ 15, 16.)  Defendant Nice-Pak Products, Inc. ("Nice-Pak") "makes flushable wipes under its Nice 'n Clean brand," and "manufactures flushable wipes for private label retailers including Costco, Target, and CVS."  (*Id.* ¶ 17.)  Defendant Professional Disposables International, Inc. ("PDI") is an "affiliate" of Nice-Pak, and "designs, makes, markets, and sells flushable wipes under its Hygea brand."  (*Id.* ¶ 18.)  Defendant Tufco "offers" private label customers "manufacturing and packaging services, including the manufacture and packaging of flushable wipes."  (*Id.* ¶ 19.)  And the "primary product line" of Defendant Rockline Industries ("Rockline") "is wet wipes, including flushable wipes."  (*Id.* ¶ 20.)  Defendants all do business in the State of Minnesota.  (*Id.* ¶¶ 15-20.)

Plaintiffs allege, often with detail, that each defendant represents that its respective wipes are "flushable."   For example, the complaint includes a photograph of "Charmin freshmates," a P&G product, labeled as "flushable wipes":



(*Id.* ¶ 59.)   The complaint also contains photographs of the packaging on Kimberly-Clark's "Cottonelle FreshCare flushable cleansing cloths," which states that the products are not only "Sewer and Septic Safe" but also "break up like toilet paper after flushing":









(*Id.* ¶¶ 67, 69.)   The complaint also includes a photograph of the packaging on Nice-Pak's "Nice n' Clean" "flushable moist wipes," wipes which Plaintiffs allege Nice-Pak has described as "safe for all well maintained sewers and septic systems":



(*Id.* ¶¶ 76-77.)   Plaintiffs' complaint also includes a photograph of PDI's "Hygea Flushable Personal Cleansing Cloths" packaging, and alleges that PDI's website describes the product as "safe for sewers and septic systems":



(*Id.* ¶ 89.)   And the complaint contains photographs of Rockline's "Equate Flushable Wipes" packaging as well; that packaging states that Rockline's wipes "Break[] Apart After Flushing":





(*Id.* ¶ 93.)   Plaintiffs do not include photographs of any of Tufco's flushable wipe packaging, but Plaintiffs do allege that Tufco, "advertises 'flushable' wipes for its consumers" on its website and "offers its private label customers . . . services, including the manufacture and packaging of flushable wipes." (*Id.* ¶¶ 19, 90.)

Contrary to the representations that Plaintiffs allege Defendants to have made, Plaintiffs claim that Defendants' wipes are not actually "flushable."   According to Plaintiffs, "flushable wipes do ***not*** degrade after flushing," and "[o]nce in the sewer system, the flushable wipes ultimately wrap around structures within the system, such as filters or pumps." (*Id.* ¶ 32.)   As a result, flushable wipes cause "clogs and back-ups." (*Id.*)  Plaintiffs state that approximately 25% of these clogs can be attributed to flushable wipes. (*Id.* ¶ 49.)  "[T]o clear the clogs, the systems need to be shut down and the wipes manually removed." (*Id.* ¶ 32.)  Plaintiffs, as operators of their respective sewer systems, allege that they have each incurred expenses from removing flushable wipes from their sewers. (*Id.* ¶¶ 6-14; *see also id.* ¶¶ 28, 33, 170, 191 (stating flushable wipes damage sewer facility-property).)

Plaintiffs also allege that Defendants are members of the Association of Nonwoven Fabrics Industry ("INDA"), a trade association comprised of the manufacturers who make wipes marketed as "flushable." (*Id.* ¶¶ 51-52.)  Per Plaintiffs, INDA is influential because manufacturers of "flushable" wipes look to INDA's "Guidelines for Assessing the Flushability of Disposable Nonwoven Products" when determining whether a given product may be labeled as "flushable." (*Id.*)  Plaintiffs allege that Defendants, through their membership in INDA, "manipulated [INDA's] test

standards and guidelines making them weaker to guarantee [Defendants'] products could be marketed as 'flushable' under the INDA guidelines." (*Id.* at 54.)

## II.    PROCEDURAL BACKGROUND

Plaintiffs filed their initial complaint on April 23, 2015. (Compl., Apr. 23, 2015.) Then Plaintiffs amended their complaint on August 10, 2015, and that amended complaint ("complaint") is the currently-operative complaint in this case. (Am. Compl.)

Plaintiffs' complaint alleges ten different claims in ten different counts against Defendants:  (1) Declaratory Judgment Act claim, (2) breach of express warranty, (3) breach of implied warranty of merchantability, (4) breach of implied warranty for particular purpose, (5) Minnesota Unlawful Trade Practices Act, (6) Minnesota False Advertising Act, (7) Minnesota Prevention of Consumer Fraud Act, (8) Minnesota Uniform Deceptive Trade Practices Act, (9) Wisconsin Trade Practices Act, and (10) Wisconsin public nuisance. (*Id.* ¶¶ 117-93.)

Plaintiffs request numerous forms of relief, including declaratory relief; an injunction against future "flushable wipe" advertising; damages; an order establishing a fund to pay for future clog clean up; and attorneys' fees, costs, and interest. (*Id.* at 57-58.)

Defendants together filed a joint motion to dismiss on September 24, 2015. Tufco joined its codefendants in the joint motion to dismiss, but also, on the same day, filed a separate motion to dismiss. The Court held a hearing on the motions on May 11.

## ANALYSIS

### I.    STANDING

Defendants first ask the Court to dismiss Plaintiffs' entire complaint for lack of standing under Rule 12(b)(1).  A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject matter jurisdiction to decide a case.  In deciding a motion under Rule 12(b)(1), the Court must first "distinguish between a 'facial attack' and a 'factual attack.'"  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  Defendants do not challenge the "factual truthfulness" of Plaintiffs' claims, but rather the sufficiency of their pleadings, and therefore Defendants' jurisdictional challenge is facial.  *Sierra Club v. Clinton*, 689 F. Supp. 2d 1147, 1154 (D. Minn. 2010).  Because Defendants' challenge is facial, the Court applies the same standard of review as the Court applies to a motion brought under Rule 12(b)(6).  *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007).

Article III of the Constitution limits the jurisdiction of the federal courts to certain "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'"  *Clapper v. Amnesty Int'l U.S.A.*, 133 S. Ct. 1138, 1146 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  To have standing, a party must show "first and foremost" an injury "in the form of an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent"; the injury must also be "fairly

traceable to the challenged action" and "redressable by a favorable ruling." *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015).

Defendants make two standing-related arguments.  First they argue that Plaintiffs' complaint is not specific enough in that it does not detail exactly how Defendants caused their injuries.  Specifically, Defendants argue Plaintiffs failed to include allegations "that (i) Defendants sold flushable wipes to Plaintiffs' residents, (ii) Plaintiffs' residents purchased Defendants' products; (iii) Plaintiffs' residents flushed Defendants' products, (iv) Defendants' products did not disperse in Plaintiffs' sewer systems, (v) Defendants' products were found in Plaintiffs' lift stations, and (vi) Defendants' products clogged Plaintiffs' lift stations."   (Defs.' Mem. at 8-9, Sept. 24, 2015, Docket No. 69.) Determining whether a complaint is too abstract or sufficiently specific is inevitably a line-drawing exercise, but Defendants' suggestion of what Article III requires is far from the mark.  A plaintiff's complaint need not exhaustively detail every single fact in the narrative of how a defendant's liability arises, because "[a]t the pleading stage, general factual allegations . . . may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Wieland v. U.S. Dep't of Health and Human Servs.*, 793 F.3d 949, 954 (8th Cir. 2015) (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).   Here, Plaintiffs explicitly make allegations that they are injured by wipes marketed as flushable, that Defendants each produce and sell these "flushable" wipes, and that it is "Defendants' continued sale and promotion of wipes as 'flushable' and 'sewer and septic safe'" that has caused and is causing Plaintiffs' injury.  (Am. Compl.

¶¶ 6-14 (repeating this allegation with respect to each individual plaintiff).)  Plaintiffs' theory of liability is no secret:  Defendants manufactured and sold products they represented to be "flushable," consumers flushed those products down their toilets in Minnesota, and those products are causing Plaintiffs' property damage and increased costs.  The facts supporting that theory are sufficiently detailed.

To support their argument, Defendants rely heavily on a recent Eighth Circuit decision, *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025 (8ᵗʰ Cir. 2014) – but *Wallace* was a very different case than this one.  In *Wallace*, a group of plaintiffs sued ConAgra alleging that not all Hebrew National hot dogs were 100% kosher, as ConAgra had advertised.  *Id.* at 1030.  According to the *Wallace* plaintiffs, ConAgra's employees were so driven by internal manufacturing quotas that with some regularity the quality-control process would break down and non-kosher beef would be included in the company's hot dogs.  *Id.* at 1028.  But the Eighth Circuit found that because plaintiffs had not alleged that they themselves had actually purchased or consumed any defective non-kosher hot dogs, plaintiffs had not pleaded an injury for standing purposes.  *Id.*  When a plaintiff alleges an injury due to a "defective product," the Eighth Circuit reasoned, it is "not enough" for a plaintiff "to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that **their** product **actually exhibited** the alleged defect."  *Id.*

Plaintiffs' case here, however, has nothing to do with manufacturing defects.  Plaintiffs' case is a breach of warranty and misrepresentation-based case.  Plaintiffs are not alleging that a poorly-manufactured subset of actually-flushable wipes are responsible

for their injuries; they are alleging that multiple entire product lines of wipes – those that come with an attendant representation that the wipes are "flushable" – are causing their injuries.  The key difference between *Wallace* and this case is that the *Wallace* plaintiffs' claims failed because they lacked an injury in that they never claimed to have actually come into contact with the offending non-kosher hot dogs, while Plaintiffs here have repeatedly alleged that not-actually-flushable "flushable" wipes are clogging their water treatment facilities.[1]  *Wallace* is not controlling.

Plaintiffs have another route past Defendant's specificity-argument too:  the Association of Nonwoven Fabrics Industry ("INDA").  Plaintiffs allege that Defendants caused and are causing Plaintiffs' injuries not only by making the products that clog their respective sewer systems, but also by their involvement in INDA, and through INDA's role in facilitating the sale of the allegedly injurious products.  According to Plaintiffs' complaint, INDA is a trade association comprised of the manufacturers who make wipes marketed as "flushable," including Defendants.   (Am. Compl. ¶ 51-52.)   The manufacturers of "flushable" wipes look to INDA's "Guidelines for Assessing the Flushability of Disposable Nonwoven Products" when determining whether a given product may be labeled as "flushable."  (*Id.*)  Plaintiffs allege that Defendants have captured INDA:  Defendants "have manipulated [INDA's] test standards and guidelines

---

[1] Defendants also highlight a recent decision from the Middle District of Florida, where the court dismissed without prejudice the plaintiffs' flushable-wipe claims against some of the same defendants named in this case, but the Court finds little persuasive value in the decision. *Sweeney v. Kimberly-Clark Corp.*, No. 14-3201, 2015 WL 5446797 (M.D. Fla., Sept. 15, 2015). While the court there did dismiss the plaintiffs' claims based on the same argument Defendants mount here, the court did so in conclusory fashion, citing nothing more than the general standing rule statement found in *Lujan* for support.

making them weaker to guarantee their products could be marketed as 'flushable' under the INDA guidelines," according to the complaint.  (*Id.* at 54.)    Thus, if Defendants' manufacture and sale of allegedly non-flushable flushable wipes cannot be called the cause of Plaintiffs' injuries, then Defendants' manipulation of INDA can.  For purposes of this motion, the Court agrees.

Defendants' second argument against Plaintiffs' standing is that Plaintiffs' injuries can be traced to numerous different causes, and that Plaintiffs have not pleaded facts showing that their injuries are caused specifically by "flushable" wipes instead of something else.  This argument misses the mark too, however, because it "wrongly equates injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation."  *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997).  A plaintiff is not deprived of standing merely because he or she alleges a defendant's actions were a contributing cause instead of the lone cause of the plaintiff's injury.  *See, e.g.*, *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 714 (6th Cir. 2015) (holding that plaintiffs had standing to sue federal agencies for a report describing plaintiffs as a gang even though plaintiffs had already been described as a gang by other independent state agencies); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 316 (4th Cir. 2013) (finding that plaintiff had standing to challenge a petition-collection ballot-access requirement, even though plaintiff's knee injury likely also contributed to his failure to collect a sufficient number of signatures); *Barnum Timber Co. v. EPA*, 633 F.3d 894, 901 (9th Cir. 2011) (finding that plaintiff had to challenge EPA's listing of plaintiff's property as an "impaired water body" because the listing was one contributing factor to the

property's decrease in value); *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 345-47 (2d Cir. 2009), *rev'd on other grounds*, 131 S. Ct. 2527 (2011) (finding that plaintiffs met the causation element of standing doctrine even though defendant-polluters were only one of numerous polluters contributing to plaintiffs' injuries). Parties should not confuse substantive tort law's "stringent proximate cause standard" with the less-stringent causation element in standing doctrine. *Libertarian Party of Va.*, 718 F.3d at 315-16.

It is true that not every hypothetical contributing cause can meet the standing doctrine's causation element. For example, a plaintiff lacks standing where the defendant's allegedly offensive conduct was just one of a laundry list of factors that could have hypothetically contributed to the at-issue result. In *Winpisinger v. Watson* – a case Defendants' rely on – supporters of Senator Edward Kennedy's 1980 primary challenge to then-President Jimmy Carter sued President Carter's cabinet secretary, alleging he violated plaintiffs' constitutional rights by using public funds and authority to keep the president in office. 628 F.2d 133, 138-39 (D.C. Cir. 1980). The D.C. Circuit held that plaintiffs lacked standing because it was at best unclear whether the cabinet secretary's alleged actions had any effect at all on the outcome of the primary race: "The endless number of diverse factors potentially contributing to the outcome of state presidential primary elections, caucuses and conventions forecloses any reliable conclusion that voter support of a candidate is 'fairly traceable' to any particular event." *Id.* at 139.

But Plaintiffs' case here is the standard contributing cause case, not the *Winpisinger* exception, because Plaintiffs allege that Defendants' conduct accounts for a full one-fourth of Plaintiffs' alleged injuries. Plaintiffs have pleaded that "flushable"

wipes are physically and literally clogging their water treatment facilities and that those wipes make up 25% of the respective clogs. For Plaintiffs' allegations to fit into the *Winpisinger* analogy, they would have had to allege that there were clogs and that flushable wipes were just one of an "endless number" of diverse causes. One in four is not an endless number.

The Court therefore finds that Plaintiffs meet the causation element and Plaintiffs have standing to assert their claims.[2]

## II.   FAILURE TO STATE A CLAIM

Defendants also ask the Court to dismiss Plaintiffs' various claims for failure to state a claim under Rule 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true to determine if the complaint "state[s] a claim to relief that is plausible on its face." *Braden v. Wal–Mart Stores, Inc.*,

---

[2] Even if the Court were wrong and Plaintiffs lack standing to pursue relief for their already-suffered harms because they have not alleged facts detailing which defendant caused which already-incurred clog, the Court finds that Plaintiffs could still have standing to pursue relief for the injuries they expect to suffer in the future. (*See* Am. Compl. ¶¶ 6-14 (stating that each plaintiff faces an "ongoing threat of future harm from Defendants' continued sale and promotion of wipes as 'flushable' and 'sewer and septic safe'").) Those allegations of future harm necessarily could not and are not required to be accompanied by the detailed chain of causation that Defendants suggest, because the imminent threat of Defendants' wipes being flushed into Plaintiffs' sewers, causing Plaintiffs harm, is sufficient. *Cf. Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."). The imminent-injury rule for standing doctrine means that a plaintiff is not required to "destroy a large building" or "bet the farm" before litigating his or her concerns. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 134 (2007). So even if Plaintiffs lack standing to pursue their claims of past harm, they still have standing to pursue relief for injuries they imminently expect to suffer when Defendants' wipes find their way into their sewer systems. And notably, Defendants have not disputed the imminent nature of Plaintiffs' alleged future injuries.

588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### A.     RULE 8

Defendants first make an argument that Plaintiffs' complaint must be dismissed for violating Rule 8, as a general matter, because Plaintiffs filed a shotgun complaint. Rule 8 requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff files a "kitchen sink" or "shotgun" complaint asserting every conceivable claim against every conceivable defendant, that complaint fails to meet Rule 8's requirements because "it does not provide fair notice" of the allegedly offending conduct to each defendant. *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831-32, 839-40 (D. Minn. 2012) (adopted opinion of magistrate judge) (dismissing complaint where plaintiff "cut and paste[d] the elements of a cause of action into a complaint" and alleged a claim that "border[ed] on the frivolous" in an effort to "throw[] up [claims] against the wall to see [what] would stick").

Here, Plaintiffs have done more than enough to meet Rule 8's requirements. Rather than file a "shotgun" complaint, they carefully chose claims to fit their theory of the case, and while their complaint could have been more specific, the barrier to Plaintiffs' pleading a complaint with more specificity appears not to have been laziness or frivolity, as was the case in *Tatone*, but rather the practical difficulty of unwinding sewer system clogs to identify which manufacturer was responsible for how much of what clog. Rule 8 does not require that much.

## B.    RULE 9

Defendants similarly argue that Counts 5 through 8 – the statutory consumer protection claims – must be dismissed because of general problems meeting Rule 9(b)'s requirements. Rule 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This rule requires plaintiffs to "identify who, what, where, when, and how" for applicable claims. *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) (quoting *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009)). The goal of this rule, as with Rule 8, is fair notice, and therefore a "complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

Here, while Rule 9 certainly applies to Counts 5 through 8, Plaintiffs have thoroughly pleaded facts about each Defendant's alleged misrepresentations in marketing their products as "flushable" when the wipes were allegedly not flushable.  For example, as shown above, paragraph 93 of the complaint contains a photo of a Rockaline wipe wrapped in trade dress prominently stating that the product is "flushable."  (Am. Compl. ¶ 93.)  Plaintiffs have included similar photographs of products with trade dress making similar representations for every defendant except Tufco.  (*See id.* ¶¶ 58-97.)  Plaintiffs also plainly allege that Defendants' representations that their products are in fact flushable are false.  (*Id.* ¶¶ 30-49.)  Therefore, the Court finds that Rule 9(b) does not require the dismissal of Counts 5 through 8.

### C.   Declaratory Judgment

Defendants argue that Count 1 – Plaintiffs' Declaratory Judgment Act claim – must be dismissed because it is really just a second express warranty claim, not a Declaratory Judgment Act claim.  The Court agrees.

The Declaratory Judgment Act of 1934 provides that a federal district court "may declare the rights and other relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  As the text of the statute suggests, Congress passed the statute to expand the availability of federal adjudication and declaratory relief to certain situations where a case or controversy exists and yet "traditional" forms of relief are not typically available.  In a typical Declaratory Judgment Act claim, a party (i) is threatened by a hypothetical traditionally "coercive"

action that is justiciable in federal court, (ii) lacks a "coercive" remedy to permit a federal court to adjudicate the dispute, and (iii) desires to litigate the matter rather than wait for the other party to file a complaint.[3]  The classic examples involve disputes about patent infringement and insurance coverage:  In the patent infringement example, without the Declaratory Judgment Act, a party accused of patent infringement would be required to wait for the patent-holder to file an infringement action – under the court's federal question jurisdiction – and only then could the alleged infringer assert its defenses of non-infringement or patent invalidity.  But because of the Declaratory Judgment Act, the alleged infringer can play offense and file its own action in federal court requesting a declaration that the patent is invalid, or that the alleged infringer's actions are not actually infringing.  *See, e.g.*, *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 848-49 (2014) (adjudicating a plaintiff's request that the court declare noninfringment).  Similarly, without the Declaratory Judgment Act, if an insurance policyholder demanded indemnification from an insurance company, but the insurance company believed the demand beyond the scope of the policy, the insurance company would be forced to wait for the policyholder to file a diversity-jurisdiction breach-of-contract lawsuit before being

---

[3] *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 19 (1983) ("Federal courts have regularly taken original jurisdiction over declaratory judgment lawsuits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question."); Richard H. Fallon, Jr. et al., *Hart & Wechsler's the Federal Courts and the Federal System* 1444 (7th ed. 2015) (quoting *Developments in the Law—Declaratory Judgments*, 62 Harv. L. Rev. 787, 801 (1949)) (stating that courts determine the presence of a sufficient amount in controversy in a Declaratory Judgment Action, for purposes of determining diversity jurisdiction, based on "[t]he potential monetary value of the right, or amount of the liability, in [the defendant's threatened] coercive action").

given a chance to adjudicate its rights in federal court.  The Declaratory Judgment Act makes it possible for the insurance company to get into federal court on its own terms and affirmatively ask the court to interpret the terms of the contract.  *See, e.g.*, *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 932 (8th Cir. 2010) (finding diversity jurisdiction over insurer's Declaratory Judgment Act claim).

However, a Declaratory Judgment Act **action** should not be confused with the **remedy** of declaratory relief.[4]  While a Declaratory Judgment Act action necessarily involves a request for declaratory relief, declaratory relief can be awarded for success on a wide variety of claims and causes of action, not just actions brought under the Declaratory Judgment Act.[5]

Here, Plaintiffs have styled their "First Claim for Relief" – what the Court is referring to as Count 1 – as a claim under the "Declaratory Judgment Act."  (Am. Compl. ¶¶ 117-21.)  Plaintiffs seek a declaration "that the Defendants' affirmations of flushability alleged herein create an express warranty that flushable wipes are flushable, but that flushable wipes are not in fact flushable, do not degrade, and cause harm to sewer

---

[4] Courts, including the Eighth Circuit, have regularly highlighted the distinction between Declaratory Judgment Act actions and declaratory relief.  *See, e.g.*, *R.R. St. & Co. v. Vulcan Materials Co.*, 569 F.3d 711, 714-17 (7th Cir. 2009); *Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 795-96 (8th Cir. 2008); *United Nat'l Ins. v. R&D Latex Corp.*, 242 F.3d 1102, 1112-14 (9th Cir. 2001).

[5] The remedy of declaratory relief, like all remedies, is not appropriate in every case and generally should not be awarded when it "will not be effective in settling the controversy." Fed. R. Civ. P. 57 advisory comm. note.  But the decision to award or not award declaratory relief must be made on its own accord.  "The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."  Fed. R. Civ. P. 57.  And "the fact that another remedy would be equally effective affords no ground for declining declaratory relief." *Id.* advisory comm. note; *see also* Restatement (Second) of Contracts § 345, cmt. d ("[C]ourts may also render declaratory judgments in conjunction with other relief.").

systems." (*Id.* ¶ 121.)  But even though this claim is styled as Declaratory Judgment Act action, it is not actually a Declaratory Judgment Act action.  It is instead another express warranty claim, just like the one found in Count 2, alleging that Defendants issued express warranties and that they breached those warranties.  Count 1 also fails to alter the landscape of the complaint in terms of remedies:  at the end of Plaintiffs' complaint, in the "prayer for relief" section, Plaintiffs request declaratory relief as a form of relief for all of their claims, including Count 2.   (Am. Compl. at 57-58 (requesting two "declaration[s]" in the "Prayer for Relief" section of the complaint).  Count 1 is entirely superfluous.   Perhaps, if there were some way Plaintiffs' Count 2 could fail while Count 1 remained viable, then maybe it would be premature to dismiss Count 1.  But Plaintiffs have not presented such a scenario, and the Court cannot conceive of one.  The Court will therefore dismiss Count 1 with respect to all Defendants.[6]

However, Defendants also ask the Court to go further than requesting that Count 1 be dismissed; they argue that Plaintiffs' entire request for declaratory relief is inappropriate.  The Court will not go that far.  Indeed, part of the reason that Count 1 is duplicative of Count 2 is because declaratory relief may be available if Plaintiffs are successful with Count 2.  Although Count 1 is not a proper Declaratory Judgment Act claim, that fact does not preclude Plaintiffs' request for declaratory relief as a remedy for their other claims.

---

[6] In the context of this case, an example of a Declaratory Judgment Act action would be the inverse of what has happened here.  If **Defendants** were to bring an action requesting that the Court declare that they have **not** breached any relevant warranty, they could very likely only come into court under the Declaratory Judgment Act.

### D.      Breach of Warranty

### 1.      Preliminary Issues:

Defendants argue that all of Plaintiffs' warranty-related claims must be dismissed because Plaintiffs are not third-party beneficiaries, the claims are barred by the statute of limitations, and Plaintiffs failed to provide pre-suit notice.

### a.  Third-Party Beneficiary Status.

In Minnesota, "[a] seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of warranty."   Minn. Stat. § 336.2-318.   The Minnesota Supreme Court has made three relevant rulings interpreting the scope and application of this section.   First, where a third-party suffers lost profits (or other economic loss) after repurchasing or using or otherwise acquiring an item manufactured or made by a defendant, that third-party is a third-party beneficiary, as defined by § 336.2-318.  *3M v. Nishika Ltd.*, 565 N.W.2d 16, 20-21 (Minn. 1997) (citing *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 916 (Minn. 1990)).   Second, where a third-party suffers property damage from a product, that person may constitute a third-party beneficiary even if the party never used, purchased, or otherwise acquired the product.  *Id.* (citing *Lloyd F. Smith Co., Inc. v. Den-Tal-Ez, Inc.*, 491 N.W.2d 11, 13-14, 16 (Minn. 1992)).   And third, where a party suffers some sort of economic loss (such as lost profits), but does **not** suffer property damage or physical injury, and never uses, purchases, or otherwise acquires the at-issue product, that person is **not** a third-party beneficiary.   *Id.*

This case falls neatly into the second of the three precedents:  Plaintiffs have alleged in several portions of their complaint that they have suffered property damage from Defendants' products.  They allege clogs of wipes "can cause substantial damage" to wastewater treatment facilities if not removed (Am. Compl. ¶ 28); Defendants' "[w]ipes have shortened the sewer pumps' lives" (*id.* ¶ 33); "consumers . . . flush[ing] the wipes into the toilet caus[es] damage to the sewer system" (*id.* ¶ 170); "[Defendants'] flushable wipes . . . clog the public sewer system . . . [and] damaged [Plaintiffs'] property" (*id.* ¶ 191); and Plaintiffs request, in their prayer for relief, the establishment of a "fund to compensate . . . for the cost associated with ongoing clean-up and removal of flushable wipes from [Plaintiffs'] sewer systems" (*id.* at 57).  Therefore, under the terms of *3M* and the *Lloyd F. Smith* cases, Plaintiffs are third-party beneficiaries of any warranty made to a consumer who purchased one of Defendants' products, regardless of whether Plaintiffs themselves used, purchased, or acquired any of Defendants' products.

### b.  Statute of Limitations

Minn. Stat. § 336.2-725, titled "Statute of Limitations in Contracts for Sale," provides in relevant part,

(1)  An Action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .

(2)  A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Here, Defendants argue that because flushable wipes have been available for purchase since at least 2008, the "tender of delivery" took place more than four years ago and Plaintiffs' claims are time barred.  But Plaintiffs have the better argument:  they argue the warranty at issue here, that the wipes are actually flushable, "extends to future performance of the goods" – the flushing of the wipe – regardless of the temporal distance of the flush to the sale.  Therefore, under the statute, the cause of action does not accrue until the date "the breach is or should have been discovered," which arguably could be the moment the wipe arrives at the sewer system facility, or at least no earlier than the date the consumer flushes the wipe down the toilet.  Either way, Plaintiffs' complaint does not solely allege that Defendants previously manufactured flushable wipes that harmed their water treatment facilities; rather, Plaintiffs allege that Defendants manufactured wipes labeled as flushable in the past **and** continue to do so now.  (Am. Compl. ¶¶ 15-20 (using the present tense to describe Defendants' actions).)  Plaintiffs' warranty claims therefore are not time barred for at least a great portion of the wipes that are allegedly clogging and will clog Plaintiffs' sewer systems.  Perhaps at some point later in the case, Defendants' liability should be limited to claims arising from wipes flushed within the past four years – but that issue need not be dealt with now.  The Court will not dismiss the warranty claims based on Defendants' statute of limitations argument.

### c.  Pre-Suit Notice

Minn. Stat. § 336.2-607(3)(a) provides, "Where a tender has been accepted . . . the buyer must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from recovery."  This requirement extends to third-party beneficiaries.  *Id.* § 336.2-607, UCC cmt.  An attempt at notice is sufficient as long as it "let[s] the seller know that the transaction is still troublesome and must be watched" – the "bar for sufficiency is low."  *Drobnak v. Andersen Corp.*, 561 F.3d 778, 784 (8th Cir. 2009) (alteration in original) (quoting Minn. Stat. § 336.2-607, UCC cmt. 4).  The purpose of the notification requirement is "to defeat commercial bad faith, not to deprive a good faith consumer of his remedy."  Minn. Stat. § 336.2-607, UCC cmt. 4.

Here, Plaintiffs sent two letters to provide Defendants with notice, and although they sent those letters prior to the filing of the operative complaint, the letters were sent after the initiation of this case.  The Court, however, does not find this delay fatal to Plaintiffs' warranty claims for at least two reasons.  First, the bar for meeting the § 336.2-607(3)(a) notice requirement "is low," as the Eighth Circuit has pointed out, and barring Plaintiffs' warranty claims here would not serve the purpose of defeating commercial bad faith – and no one has argued Plaintiffs' brought their claims in bad faith.  Second, even if Plaintiffs' should have attempted notice earlier than they did, Defendants have failed to demonstrate that they suffered any prejudice by the delay.  *See Leamington Co. v. Nonprofits' Ins. Ass'n*, 615 N.W.2d 349, 354 (Minn. 2000) (declining to bar plaintiffs' recovery based on their 17-day delay in submitting proof of loss paperwork because

defendants did not show that the delay caused them prejudice).  Defendants have been locked in litigation over the flushability of their "flushable" wipes in courts all across the country; it could hardly be said that Plaintiffs' complaint was the first time Defendants' received notice of the kind and type of claims raised by Plaintiffs.  The Court therefore will not dismiss Plaintiffs' warranty claims for failure to comply with § 336.2-607(3)(a).[7]

### 2.      Express Warranty

Defendants next argue Plaintiffs' express warranty claim in Count 2 must be dismissed because, according to Defendants, Plaintiffs have not pleaded facts suggesting any consumer bought Defendants' wipes in reliance on Defendants' representations that the wipers were in fact flushable.

Express warranties by a seller are created by an "affirmation of fact or promise" relating to the goods, or a "description of the goods," if made as part of the "basis of the bargain."  Minn. Stat. § 336.2-313(1).  "In actual practice, affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement."  *Id.*, UCC cmt. 3.

Here, Plaintiffs repeatedly allege – often with photos of Defendants' products wrapped in packaging emblazoned with the word "flushable" – that Defendants described

---

[7] Plaintiffs also argue Minnesota's notice requirement does not apply in this case because the U.S. Constitution's Supremacy Clause and *Erie* doctrine require the Court to ignore the rule. But that could only be true if the notice requirement conflicted in some way with federal law. Plaintiffs have not made that argument, but anyway, because the Court finds in Plaintiffs' favor on the issue, the Court need not reach the matter.

and promised consumers that their products were indeed "flushable."  And as the comment to Minnesota's statute explicitly states, Plaintiffs need not show any reliance on Defendants' representation that their wipes were flushable because those "affirmations of fact" are woven "into the fabric of the agreement."[8]

The Court will deny Defendants' motion to dismiss with respect to Count 2.

### 3.       Implied Warranty of Merchantability

On Count 3, Defendants argue that Plaintiffs have not pleaded facts sufficient to show that the "flushable" wipes failed to meet consumer expectations.

Minn. Stat. § 336.2-314 provides in relevant part, "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind," and that implied warranty includes a warranty that the goods "are fit for the ordinary purposes for which such goods are used" and will "conform to the promises or affirmations of fact made on the container of label if any."

Here, Defendants argue that a reasonable person might think a wipe is "flushable" as long as it passed through their toilet's piping, or at least that Plaintiffs have not met their burden of pleading facts suggesting otherwise.  But Plaintiffs allege in numerous paragraphs that Defendants described their wipes as safe not just for toilets, but also for wastewater treatment facilities.  (*See, e.g.*, Am. Compl. ¶ 64 (quoting Kimberly-Clark as

---

[8] Minnesota law formerly required a plaintiff bringing an express warranty claim to prove reliance, but the legislature changed the rules at least with respect to sales of goods when it adopted § 336.2-313.  *In re Zurn Pex Plumbing*, 267 F.R.D. 549, 564 (D. Minn. 2010) (describing the history of Minnesota law on the topic and arriving at the same conclusion as the Court does here).

allegedly describing its wipes, on Cottonelle's website, as "clear[ing] . . . sewers . . . and municipal treatment systems); *id.* ¶ 77 (quoting Nice-Pak as describing its wipes, on its packaging, as "safe for all well maintained sewers and septic systems"); *id.* ¶ 89 (quoting PDI as labeling its product as "safe for sewers and septic systems").)   A reasonable person would undoubtedly expect that a product represented to be safe for sewer systems actually be safe for sewer systems – not just for the consumer's own piping.   The Court therefore finds that these factual allegations make it plausible that Plaintiffs' could succeed in showing that the implied warranty of merchantability extends to Plaintiffs' water treatment facilities.   The Court will deny Defendants' motion with respect to Count 3.

### 4.     Implied Warranty of Fitness for a Particular Purpose

Defendants argue that Count 4, alleging breach of an implied warranty of fitness for a particular purpose, must be dismissed because Plaintiffs have not argued that Defendants ever made any sort of representation of a particular purpose.   *See* Minn. Stat. § 336.2-315 (defining implied warranty for a particular purpose).   The Court agrees, and Plaintiffs essentially conceded the point at the hearing on Defendants' motion.   The Court will therefore grant Defendants' motion with respect to Count 4.

### E.     Minnesota Consumer Protection Statutes

Defendants argue that Plaintiffs' consumer protection claims, filed under various Minnesota statutes in Counts 5, 6, and 7, must all be dismissed because Plaintiffs never allege that they were consumers of Defendants' products.

The Minnesota Supreme Court has already confronted this issue. In 2001, this Court certified the following question to the Minnesota Supreme Court: "[M]ust plaintiffs be purchasers of defendants' products in order to properly plead a claim under [the applicable consumer protection statutes]?" *Grp. Health Plan, Inc. v. Phillip Morris Inc.*, 621 N.W.2d 2, 5 (Minn. 2001). The state supreme court answered the question with a resounding no: "[T]o state a claim that any of the substantive [consumer protection] statutes has been violated, the plaintiff need only plead that the defendant engaged in conduct prohibited by the statutes and that the plaintiff was damaged thereby." *Id.* at 12. It is true that other courts, such as the Eighth Circuit, have drawn a line when the alleged fraud involved the plaintiffs' sale of a product, rather than a purchase of one. *See, e.g.*, *Popp Telecom, Inc. v. Am. Sharecom, Inc.*, 361 F.3d 482, 493 n.12 (8th Cir. 2004) (holding that *Group Health*'s extension of Minnesota consumer fraud claims beyond just consumers did not extend the availability of the claim to plaintiffs whose alleged harms occurred after they sold a stock, rather than consumed a product). But Plaintiffs here are not sellers, and nothing in *Popp Telecom* or any other case that has been presented to the Court undermines *Group Health*'s central tenet that the availability of a claim under Minnesota's consumer protection statutes extends not only to the literal consumer but also to potential plaintiffs indirectly affected by alleged misrepresentations.

Defendants essentially ask the Court to add a standing-like element into Minnesota's substantive consumer protection law, limiting the availability of the claims to plaintiffs whose alleged injuries are "directly traceable" to the defendant's alleged misrepresentations. (Defs.' Mem. at 33, Sept. 24, 2015, Docket No. 69.) The Court finds

no such requirement in Minnesota law and, to the contrary, finds this line of reasoning foreclosed by the Minnesota Supreme Court's *Group Health* decision.

The Court will therefore deny Defendants' motion with respect to Counts 5, 6, and 7.

### F.    Minnesota Deceptive Trade Practices Act

Defendants also argue that Count 8, alleging a claim under Minnesota's deceptive trade practices statute, must be dismissed because Plaintiffs never allege they competed with Defendants. But Minnesota's deceptive trade practices statute explicitly states, "In order to prevail in an action [under this section], a complainant need not prove competition between the parties."  Minn. Stat. § 325D.44, subd. 2.  Defendants main supportive argument relies on a U.S. Supreme Court case interpreting the federal Lanham Act to require a plaintiff to "allege an injury to a commercial interest" in order to plead a proper false advertising claim.  *Lexmark Int'l, Inc. v. Statis Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014).  While the Supreme Court's interpretation of the federal analogue to Minnesota's statute is without a doubt persuasive, it is still an interpretation of federal law, not Minnesota law, and cannot overcome the text of Minnesota's statute: Plaintiffs "need not prove competition" in Minnesota.  Minn. Stat. § 325D.44, subd. 2; *see also Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, No. 09-1091, 2011 WL 4457956, at *4-5 (D. Minn. Sept. 23, 2011) (holding that § 325D.44 does not require a plaintiff to prove competitive injury);  *Kovatovich v. K-Mart Corp.*, 88 F. Supp. 2d 975,

985 n.4 (D. Minn. 1999) (same).  The Court will therefore deny Defendants' motion with respect to Count 8.

### G.     Wisconsin's Tort Reform Act

Defendants argue that Plaintiffs Wisconsin law claims in Counts 9 and 10 should be dismissed because of Wisconsin's Tort Reform Act.

In 2011, the Wisconsin Legislature passed the Wisconsin Tort Reform Act in part for the purpose of undoing relatively recent innovations in product liability law that permitted plaintiffs to recover from defendants even when a plaintiff could identify only a class of products, made and sold by a class of companies, as the source of the plaintiff's injury.   Wis. Stat. § 895.046(1g).   The new statute accomplishes its objective by imposing a "burden of proof" on a plaintiff alleging a product liability claim to prove that the defendant is associated with "the specific product alleged to have caused the claimant's injury or harm."   Wis. Stat. § 895.046(3) (emphasis added).   The statute's exception proves how important specificity now is in Wisconsin law:  Where a plaintiff lacks a "specific product identification," a court may impose liability on a defendant only where, among other things, (1) "there is no other lawful process" for the plaintiff to "seek any redress," **and** (2) the plaintiff suffered an injury caused by a product "chemically and physically identical" to the "specific product" that the plaintiff alleges caused his or her injury.   *Id.* § 895.046(4).   In other words, except in limited scenarios – perhaps prescription drug product liability cases, for example – a plaintiff may only receive relief

in a products liability case if the plaintiff knows which specific products caused her injuries.

The Court notes that in interpreting the Tort Reform Act, it is writing on a blank slate. The Court is aware of no controlling or even persuasive precedents interpreting the statute. But for two reasons, the Court finds that Wisconsin's Tort Reform Act does not require that Plaintiffs' Wisconsin law claims be dismissed at this stage of the case. First, according to the text of the statute, the Tort Reform Act is a rule that limits liability, not a rule for pleading. The statute imposes a "burden of proof" on the plaintiff, limits when certain defendants may be held "liable," and rations "remed[ies]." *Id.* § 895.046(3)-(4). This is not the language of a heightened pleading standard, but rather a narrowing of the availability of relief. Thus, for Plaintiffs' purposes, the Tort Reform Act might eventually deny them relief if, later in the case, they cannot show that Defendants made the specific products that are causing and have caused them harm. But nothing in the Tort Reform Act requires the dismissal of a claim that otherwise meets Rule 8's (or 9(b)'s) requirements.

Second, the Court notes that under the governing law on pleading, Plaintiffs' complaint meets the Tort Reform Act's requirements. With the *Iqbal-Twombly* pleading standard, the Court must determine if the facts pleaded in the complaint, when presumed to be true, give rise to a plausible claim to relief. Here, Plaintiffs make explicit allegations that they are injured by wipes marketed as flushable, that Defendants each produce and sell these "flushable" wipes under certain specific lines and labels, and that it is "Defendants' continued sale and promotion of wipes as 'flushable' and 'sewer and

septic safe'" that has caused and is causing Plaintiffs' injury.  (Am. Compl. ¶¶ 6-14 (repeating this allegation with respect to each individual plaintiff).)  As detailed above, Plaintiffs specify the at-issue products with descriptions and photographs – and different allegedly-problematic products for each Defendant, not one generic version of a product that each Defendant makes.  And Plaintiffs allege that they will be able to determine which wipes are in which particular plaintiff's wastewater treatment facilities.  (*See id.* ¶ 49.)

The Court agrees with Defendants that it is a close question whether it is plausible that each and every specific product is causing each and every plaintiff harm – but when examined on a product by product basis, it is plausible that each product has been sold to customers in the vicinity of Plaintiffs' sewer systems and has entered their piping and caused them the harm that they allege to have taken place.  Perhaps Plaintiffs will need to do more to meet the Tort Reform Act's terms when this case enters the liability phase, but for now, the Court finds that whether Plaintiffs have stated a claim on the Wisconsin law claims does not depend on the Tort Reform Act.

### H.    Wisconsin Public Nuisance

Even if the Tort Reform Act does not require the dismissal of Plaintiffs' public nuisance claim, Defendants argue Plaintiffs have failed in Count 10 to properly plead a public nuisance claim under Wisconsin law.

In Wisconsin, a public nuisance is "a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire

community." *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 646 N.W.2d 777, 788 (Wis. 2002). Wisconsin defines its public nuisance law to be "consistent" with the Restatement's definition of the tort, which explicitly includes "conduct" that "involves a significant interference with the public health, . . . the public comfort or the public convenience." *Id.* at 788 n.15 (quoting *Restatement (Second) of Torts* § 821B (1979)).

Here, Plaintiffs allege that Defendants' products are drastically increasing the cost of Plaintiffs' water treatment facilities, and these facilities are used to literally clean the water for the public health. Defendants' main argument to the contrary is that they are not responsible for the literal clogs, but rather the allegedly inadequate or false warnings that indirectly lead to the clogs, and giving an inadequate warning is not an action that may give rise to a public nuisance. The Court finds no basis for this distinction in the law. In the place of a typical "causation" requirement, Wisconsin only requires that a plaintiff pursuing a public nuisance claim show that he or she (1) had "either actual or constructive" notice of the alleged public nuisance, and (2) the failure of the defendant to "abate" the public nuisance caused the plaintiff's injury. *Id.* at 788. Plaintiffs' complaint meets both elements, alleging that Defendants' wipes were sold throughout Wisconsin, that flushable wipes were causing problems in Plaintiffs' sewer systems and that Defendants continued their sales after gaining knowledge of the alleged problems (and entering litigation about the alleged problems in other districts), and that flushable wipes account for 25% of Plaintiffs' clogs.

Defendants are correct that Wisconsin requires a showing that a public-nuisance defendant "maintains a condition or activity," but Defendants have offered no reason why

selling a product represented to be flushable that later ends up increasing costs for sewer-system operators cannot constitute such an "activity."  *See id.* ("maintains a condition or activity").  Defendants also argue that Wisconsin limits public nuisances to activities that hinder use of "public place[s]," and that wastewater treatment facilities are not public places, but again, Defendants focus on the wrong alternative element in the law:  a public nuisance is something that substantially or unduly interferes with the use of "a public place **or with the activities of an entire community**."  *Id.* (emphasis added).  The Court finds that a substantial interference with a community's publicly funded, publicly operated wastewater treatment is an interference with an activity of the entire community.

The Court will deny Defendants' motion with respect to the Wisconsin public nuisance claim found in Count 10.[9]

## I.     Conclusion on Defendants' Motion

The Court will grant Defendants' motion with respect to Counts 1 and 4:  Count 1 because it is a duplicative express warranty claim and not an independent Declaratory Judgment Act action, and Count 4 because Plaintiffs do not allege in their complaint that any defendant made an express warranty for a particular purpose.  The Court will deny the motion with respect to all of the other claims.

---

[9] Defendants' only argument that Count 9 must be dismissed is based on the Wisconsin Tort Reform Act; they have not made an independent argument against the claim.

## III.   TUFCO'S SEPARATE MOTION TO DISMISS

Tufco joined Defendants' joint motion to dismiss, but also brought its own motion, arguing that Plaintiffs make insufficient factual claims specific to Tufco, and therefore the Court should dismiss all ten claims as they relate to Tufco.

Tufco allegedly manufactures wipes for "private label customers," who then sell or distribute the wipes.  (Am. Compl. ¶¶ 19, 90-91.)  Thus, Plaintiffs have a slightly more difficult task in alleging that Tufco represented to its private label customers that Tufco wipes were flushable, because Tufco is apparently not a consumer-facing company.  For every defendant other than Tufco, Plaintiffs easily surpassed this hurdle by quoting Defendants' representations made to customers and pasting photographs of Defendants' representations made on the packaging of their respective products.  But for Tufco, Plaintiffs have to allege that Tufco made representations to its private label customers, rather than end-user consumers.

Plaintiffs do barely meet the mark, however, by alleging, "On its website, Tufco . . . clearly advertises 'flushable' wipes for its consumers."  (*Id.* ¶ 19.)  Advertisements can constitute warranties under Minnesota law.  *Baumgartner v. Glesener*, 214 N.W. 27, 28 (Minn. 1927) (finding that defendant made a warranty through a representation made in an advertisement).  And it is more than plausible to suggest that Tufco's private label customers purchased wipes from Tufco based on Tufco's online representation that those wipes were "flushable."

Additionally, Plaintiffs allege that Tufco "offers" its private label customers "services, including the manufacture and packaging of flushable wipes."  (Am. Compl.

¶ 19.)  If Tufco does actually "offer" its clients the manufacturing of "flushable" wipes – and for the purposes of this motion to dismiss the Court must presume as much – then it is plausible that Tufco did in fact warrant and represent that its wipes were flushable.

Plaintiffs' allegations against Tufco may not be as detailed and lengthy as they are against Tufco's co-defendants, but Plaintiffs' Tufco-specific allegations are enough to keep Tufco in the case.

However, there is an exception:  Wisconsin's Tort Reform Act.  For the non-Tufco Defendants, Plaintiffs allege they suffered harms from specific products manufactured by each specific defendant.  But for Tufco, Plaintiffs only allege that Tufco makes flushable wipes in the generic sense; Plaintiffs do not, for example, allege that Tufco made wipes for a specific company, who then marketed under Brand X, and that Brand X wipes have caused Plaintiffs' harm.  The Court finds that while more is unnecessary for Plaintiffs' non-Wisconsin claims against Tufco, the state's Tort Reform Act raised the bar.

The Court will therefore grant Tufco's separate motion to dismiss with respect to the Counts 1 and 4, for the reasons mentioned above in the discussion on Defendants' motion; grant Tufco's motion with respect to Counts 9 and 10 – the Wisconsin state law claims – because the complaint does not contain allegations about any specific Tufco products; and deny Tufco's motion for the remaining six counts.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Defendants' Joint Motion to Dismiss [Docket No. 67] is **GRANTED in part** and **DENIED in part** as follows.

     a.     The motion is **GRANTED** as to Count 1 (Declaratory Judgment Act claim) and  Count 4 (breach of implied warranty for particular purpose).  Counts 1 and 4 are **DISMISSED without prejudice**.

     b.     The motion is **DENIED** as to Count 2 (breach of express warranty), Count 3 (breach of implied warranty of merchantability), Count 5 (Minnesota Unlawful Trade Practices Act), Count 6 (Minnesota False Advertising Act), Count 7 (Minnesota Prevention of Consumer Fraud Act), Count 8 (Minnesota Uniform Deceptive Trade Practices Act), Count 9 (Wisconsin Trade Practices Act), and Count 10 (Wisconsin public nuisance claim).

2.     Defendant Tufco's Separate Motion to Dismiss [Docket No. 75] is **GRANTED in part** and **DENIED in part** as follows.

     a.     The motion is **GRANTED** as to Count 1 (Declaratory Judgment Act claim), Count 4 (breach of implied warranty for particular purpose), Count 9 (Wisconsin Trade Practices Act), and Count 10 (Wisconsin public nuisance claim).  Counts 1, 4, 9, and 10 are **DISMISSED without prejudice**.

     b.     The motion is **DENIED** as to Count 2 (breach of express warranty), Count 3 (breach of implied warranty of merchantability), Count 5 (Minnesota Unlawful Trade Practices Act), Count 6 (Minnesota False Advertising Act),

Count 7 (Minnesota Prevention of Consumer Fraud Act), and Count 8 (Minnesota

Uniform Deceptive Trade Practices Act).


DATED:   September 28, 2016                        _____ s/ _John M. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                                Chief Judge
                                                      United States District Court