# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

---

CITY OF MANKATO, MINNESOTA;
CHISAGO LAKES JOINT SEWAGE
TREATMENT COMMISSION;  SAUK
CENTRE PUBLIC UTILITIES
COMMISSION; VILLAGE OF
HOLMEN, WISCONSIN; CITY OF
FERGUS FALLS, MINNESOTA; CITY
OF ELK RIVER, MINNESOTA; and
CITY OF PRINCETON, MINNESOTA,

                    Plaintiffs,

v.

KIMBERLY-CLARK CORPORATION
and ROCKLINE INDUSTRIES,
                    Defendants.

Civil No. 15-2101 (JRT/TNL)


**FILED UNDER SEAL**

**MEMORANDUM OPINION AND
ORDER**

---

Daniel E. Gustafson, Jason S. Kilene, Joshua J. Rissman, and Raina C. Borrelli, **GUSTAFSON GLUEK PLLC**, 120 South Sixth Street, Suite 2600, Minneapolis, MN 55402; and Charles J. Kocher, Patrick Howard, and Simon B. Paris, **SALTZ, MONGELUZZI, BARRETT & BENDESKY, PC**, 1650 Market Street, Fifty-Second Floor, Philadelphia, PA 19103, for plaintiffs.

Emily A. Ambrose, Jerry W. Blackwell, and S. Jamal Faleel, **BLACKWELL BURKE PA**, 431 South Seventh Street, Suite 2500, Minneapolis, MN 55415, for Defendant Rockline Industries.

Kara L. McCall, **SIDLEY AUSTIN LLP**, One South Dearborn Street, Suite 3300, Chicago, IL 60603, Eamon P. Joyce, **SIDLEY AUSTIN LLP**, 787 Seventh Avenue, New York, NY 10019, and Tracy J. Van Steenburgh, **NILAN JOHNSON LEWIS PA**, 120 South Sixth Street, Suite 400, Minneapolis, MN 55402, for Defendant Kimberly-Clark Corporation.

Plaintiffs brought this action in April 2015 against companies marketing and selling "flushable wipes." Plaintiffs allege that the wipes do not degrade as advertised and have caused damages to sewer systems and wastewater treatment plants. The Court has before it three matters:

First, Plaintiffs object to the Report and Recommendation ("R&R") of United States Magistrate Judge Tony N. Leung recommending that Plaintiffs' Motion to Limit the Testimony of Defense Expert Dr. Maureen Reitman (the "Reitman Motion") be denied without prejudice. Because the Magistrate Judge did not clearly err in recommending that the motion be denied without prejudice, the Court will overrule Plaintiffs' objections and adopt the R&R in full.

Second, Plaintiffs appeal the Magistrate Judge's Order (the "Supplemental Discovery Order") denying Plaintiffs' Motion to Compel Rockline to Supplement its Discovery Pursuant to Rule 26(e)(1) (the "Supplemental Discovery Motion"). Because the Magistrate Judge's ruling was not clearly erroneous, the Court will deny Plaintiffs' appeal and affirm the order.

Third and finally, Defendant Kimberly-Clark Corporation ("Kimberly-Clark") appeals the portion of the Magistrate Judge's order (the "Powling Order") granting Plaintiffs' Motion to Compel Documents Withheld as Privileged by Kimberly-Clark's Employee Expert, David Powling (the "Powling Motion"). Because the majority of the Magistrate Judge's conclusions were not clearly erroneous, the Court will deny Kimberly-Clark's appeal and affirm the Powling Order except as to Document Numbers 92, 100, and 895.

# BACKGROUND

## I.    FACTUAL BACKGROUND

This action centers on the "flushability" of Defendants' hygienic wipes.  *See City of Wyoming v. Procter & Gamble Co.*, 210 F. Supp. 3d 1137, 1145 (D. Minn. 2016).  Plaintiffs claim the wipes are not flushable, degradable, and/or septic system safe as marketed by the Defendants.  (*See, e.g.*, Am. Compl. ¶¶ 1, 126, 131, 141, 156-58, 164, 170, 176, 184-87, 191, Aug. 10, 2015, Docket No. 61.)  Plaintiffs allege that the wipes have impaired, obstructed, and damaged their sewer systems.  (*See, e.g.*, *id*. at ¶¶ 1, 6-14, 127, 165, 171, 177, 187, 192.)  Plaintiffs also allege that Defendants have manipulated industry guidelines, allowing them to label their wipes as "flushable" when they are not.  (*Id.* ¶¶ 50-57.)

### A.    Industry Standards

As an affirmative defense, Rockline asserts that it "complie[s] with industry standards."  (Rockline's Answer to Pls.' First Am. Compl. ("Rockline's Answer") at 84, Oct. 12, 2016, Docket No. 151.)

The Association of Nonwoven Fabrics Industry ("INDA") publishes guidelines for marketing wipes as "flushable."  (Am. Compl. ¶¶ 51-52.)  These guidelines include a series of tests that a wipe must pass to be labeled "flushable."  (Decl. of S. Jamal Faleel ("Faleel Decl.") ¶ 8, Ex. 6 ("Menna Rep.") at 3-4, Oct. 12, 2018, Docket No. 601; Decl. of Daniel E. Gustafson ("Gustafson Decl.") ¶ 3, Ex. 1 ("Reitman Rep.") at 4, Sept. 21, 2018, Docket No. 512.)  The third edition of the INDA guidelines ("GD3") was published in 2013; thus,

it was in effect before and during most of this litigation.  (Reitman Rep. at 4 n. 12; *see* Menna Rep. at 3–4.)

Around July 2013, a technical working group was formed to develop a fourth edition of the flushability guidelines ("GD4").  (2d Declaration of Daniel E. Gustafson ("2d Gustafson Decl.") ¶ 3, Ex. A ("Rouse Letter") at 2-3, Nov. 12, 2018, Docket No. 658-1.) The technical working group included members of INDA and members of the wastewater industry, including Robert Villee, Cynthia Finley, and Frank Dick.  (*Id.* at 2; 2d Decl. of S. Jamal Faleel ("2d Faleel Decl.") ¶ 16, Ex. 9 ("Loftus Dep.") at 116-17, Nov. 19, 2018, Docket No. 698-1.)  Villee and Finley were identified by Plaintiffs as possible witnesses, and Dick is one of Plaintiffs' experts.

In May 2018, during expert discovery, INDA published GD4.  (*See* Reitman Rep. at 4 n.12.)  In June, Rockline commissioned testing of its wipes under the new guidelines by an independent lab.  (Gustafson Decl. ¶ 5, Ex. 3 ("GD4 Testing Report") at 2, Sept. 21, 2018, Docket No. 514.)  The resulting lab report is dated July 23, 2018.  (*Id.*)  Defense counsel obtained the report on August 13 and provided it to Plaintiffs' counsel on August 24 as a supplement per Rule 26(e).  (Defs.' Opp. to Reitman Mot. at 13 n.6, Oct. 12, 2018, Docket No. 596; Pls.' Objs. at 5, Jan. 31, 2019, Docket No. 876.)

### B.    Slosh Box Testing

One of the INDA guideline tests—the validity of which is debated in the present action—is the "slosh box" test.  (Menna Rep. at 9.)  This test measures "a wipe's potential to disintegrate when subjected to mechanical agitation in wastewater."  (*Id.*)  GD4 shortened the amount of time allowed for wipes to disintegrate under the "slosh box" test

from 180 minutes to 60 minutes. (Faleel Decl. ¶ 5, Ex. 3 ("GD4") at 33, October 12, 2018, Docket No. 598-1.)

### C. Rockline Expert Dr. Maureen Reitman

Rockline retained Dr. Maureen Reitman to rebut the flushability analysis provided by Plaintiffs' expert, Dr. Todd Menna. (*See* Reitman Rep. at 2.) Reitman's report was submitted on July 2, 2018. (*Id.*) The report summarized Menna's report and critiqued his testing and analysis in light of the GD3 and GD4. (*Id.* at 5-12.)[1] Specifically, Reitman criticized Menna's variation of the slosh-box testing duration, noting the testing did not conform to GD3 or GD4 parameters. (*Id.* at 9-11.) Reitman ultimately opined that "Rockline products acceptably disintegrate during GD3 [slosh-box testing], and under certain of Dr. Menna's modified conditions." (*Id.* at 12.) Following submission of Reitman's report, Rockline received the results of the GD4 testing of its wipes that it had commissioned. (GD4 Testing Report at 2.)

On September 5, 2018, Reitman was deposed. (Faleel Decl. ¶ 10, Ex. 8 ("Reitman Dep."), Oct. 12, 2018, Docket No. 602.) Reitman testified that she had reviewed additional materials since her report, including the results of the GD4 testing. (*Id.* at 5-6.) She characterized the GD4 test results as a "newer piece of information that is not contained in the existing report, but . . . simply consistent with everything else." (*Id.*) She stated: "I already referenced the GD4 development and the Slosh Box Disintegration Test in general in the report, and that doesn't change." (*Id.*) She testified that the GD4 slosh box test results

---

[1] Menna reduced the duration of the slosh box testing to 90 minutes in anticipation of GD4. (Reitman Report at 9; Menna Report at 10.)

were "consistent with the existing analysis" and noted the results "do[] not change the primary opinions." (*Id*. at 7.) Instead of providing fodder for a new opinion, she described the GD4 results as "expand[ing] one of the existing opinions in which [she] state[s] that the Rockline products acceptably disintegrate during GD3 [slosh-box testing], and [she] would expand that to include the GD4." (*Id*. at 6.)

### D.    Kimberly-Clark Employee Expert David Powling

On July 2, 2018, Kimberly-Clark disclosed that it might call David Powling as a non-retained employee expert witness under Federal Rule of Civil Procedure 26(a)(2)(C). (3d Decl. of Daniel E. Gustafson ("3d Gustafson Decl.") ¶ 3, Ex. A at 2, Nov. 12, 2018, Docket No. 667-1.) Powling is the Research and Engineering Technical Leader for Kimberly-Clark. (*Id.*) Kimberly-Clark indicated that Powling might provide expert testimony to rebut Plaintiffs' experts, Menna and Dick. (*Id.* at 3.)

Specifically, Kimberly-Clark stated that Powling might testify that: (1) Menna's slosh box testing was flawed and does not demonstrate that Kimberly-Clark's wipes are capable of causing or did cause the damages Plaintiffs allege; (2) Dick's drop testing was flawed and does not demonstrate that Kimberly-Clark's wipes are capable or did cause the damages Plaintiffs allege; (3) Kimberly-Clark's internal pump studies show that its wipes are not capable of causing the damages Plaintiffs allege and that non-flushable products "exert far greater strains on pumps" than do Kimberly-Clark's flushable wipes; (4) Rob Johnson's analysis of samples collected from Plaintiffs' systems confirm that non-flushable products are more likely to have caused the damages Plaintiffs allege; and (5) "[t]he testing parameters being espoused by Plaintiffs' experts are inconsistent with various

wastewater [industry] proposals at various points in time as part of" industry processes, and other flushability proposals by the wastewater industry are "untethered to whether a wipe labeled flushable is capable of causing clogs or damage to equipment." (*Id.*)

Kimberly-Clark also indicated that Powling "may provide opinions or inferences based on his knowledge and experience" and that such opinions "are included or related to the above [,] . . . within his personal knowledge[,] and do not require explicit disclosure." (*Id.* at 3-4.)

In an amended disclosure, Kimberly-Clark offered more detailed information regarding Powling's background and experience. (3d Gustafson Decl. ¶ 6, Ex. D ("Am. Powling Disclosure") at 16, Nov. 12, 2018, Docket No. 667-1.) It also added that Powling's opinions would be based, in part, "on his knowledge of the proprietary technologies that allow Kimberly-Clark flushable wipes to immediately begin losing strength when they come into contact with water" and his "knowledge of the results of other collection studies." (*Id.* at 17.)

## II.    PROCEDURAL BACKGROUND

Since the initial filing of this case, numerous plaintiffs and defendants have been dismissed. *See City of Wyoming, Minnesota v. Procter & Gamble Co.*, No. CV 15-2101 (JRT/TNL), 2019 WL 458388, at *1 (D. Minn. Feb. 5, 2019).

Plaintiffs and Rockline agreed that the cutoff for production would be January 2017. (*See* 2d Faleel Decl. ¶ 9, Ex. 2 at 15-16, Nov. 19, 2018, Docket No. 698-1.) During discovery, Plaintiffs sought information related to development of INDA guidelines and,

specifically, to the anticipated GD4 guidelines.  (*See, e.g.*, 2d Gustafson Decl. ¶¶ 4-5, Exs. B-C at 14-15, 36, Nov. 12, 2018, Docket No. 658-1.)  Plaintiffs also asked about the development of GD4 when deposing Rockline's corporate designee, and deposed INDA. (2d Faleel Decl. ¶ 17, Ex. 10 at 3-4, Nov. 19, 2018, Docket No. 699; Loftus Dep. at 115.)

The year-long discovery period concluded on December 1, 2017.  (Am. Pretrial Scheduling Order, Sept. 12, 2017, Docket No. 189.)  Around the end of June or early July 2018, Plaintiffs approached Rockline about supplementing production based on the publication of GD4.  (2d Gustafson Decl. ¶ 8, Ex. F at 46-47, Nov. 12, 2018, Docket No. 658-1.)

### A.    Reitman Motion

On September 21, 2018, Plaintiffs filed the Reitman Motion.  (Reitman Mot., Sept. 21, 2018, Docket No. 507.)  They sought to exclude Reitman from testifying about the GD4.  (*Id.*)  More specifically, Plaintiffs' sought to exclude any testimony by Reitman that Rockline wipes satisfy GD4 tests under Rule 37(c)(1) because such testimony would constitute a new, previously undisclosed, and untimely opinion under Rule 26.  (Pls.' Mem. Supp. on Reitman Mot. at 2, Sept. 21, 2018, Docket No. 509.)  The Reitman Motion was referred to the Magistrate Judge.  (Order Referring Mot., Sept. 28, 2018, Docket No. 587.) On January 17, 2019, the Magistrate Judge issued an R&R on the Reitman Motion recommending that it be denied without prejudice.  (R. & R. at 12, Jan. 17, 2019, Docket No. 861.) Plaintiffs object.  (Pls.' Objs.) Rockline opposes Plaintiffs objections.  (Rockline Opp., Feb. 14, 2019, Docket No. 989.)  Kimberly-Clark has taken no position as to the Reitman Motion.  (R. & R. at 2, n.1.)

### B.    Supplemental Discovery Motion

On November 12, 2018, Plaintiffs filed the Supplemental Discovery Motion, seeking discovery related to GD4.  (Suppl. Discovery Mot., Nov. 12, 2018, Docket No. 654.)  The Magistrate Judge denied the Motion, concluding that Plaintiffs did not seek supplementation but rather "to reopen discovery with respect to GD4 for information outside the scope of the parties' negotiated timeframe now that the GD4 guidelines have been published."  (Suppl. Discovery Order at 9, 13, Jan. 17, 2019, Docket No. 862.)  Plaintiffs appeal.  (Pls.' Appeal, Jan. 31, 2019, Docket No. 866.)  Rockline opposes the appeal.  (Rockline Opp., Feb. 14, 2019, Docket No. 991.)  Kimberly-Clark has taken no position as to the Supplemental Discovery Motion.  (Suppl. Discovery Order at 2, n.1.)

### C.    Powling Motion

On November 12, 2018, Plaintiffs also filed the Powling Motion, seeking documents they alleged were improperly withheld as privileged.  (Powling Mot., Nov. 12, 2018, Docket No. 664.)  The Magistrate Judge granted the order in part and denied it in part.  (Powling Order at 20, Jan. 17, 2019, Docket No. 863.)  The Magistrate Judge found that, "[u]nder the circumstances of this case, Kimberly-Clark's designation of Powling . . . has waived attorney-client and work-product protections for documents . . . Powling considered . . . in connection with Kimberly-Clark's flushable wipes."  (*Id.* at 14.)  He ordered Kimberly-Clark to produce "all documents identified on Kimberly-Clark's Amended Privilege Log as being authored or received by Powling."  (*Id.* at 16.)  However, he denied the Powling Motion as to documents that Powling did not consider, documents that related to draft expert disclosures in other flushable wipes litigation, and documents

related to Kimberly-Clark's legislation and lobbying efforts.  (*Id.* at 16-17, 19.)  Kimberly-Clark seeks to overrule the Powling Order to the extent that it held that Kimberly-Clark had waived privilege as to documents Powling considered.  (Kimberly-Clark Appeal at 4, Jan. 31, 2019, Docket No. 864.)  Plaintiffs' ask the Court to affirm the Powling Order.  (Pls.' Opp. at 14, Feb. 14, 2019, Docket No. 982.)  Rockline has taken no position as to the Powling Motion.  (Powling Order at 2, n.1.)

## DISCUSSION

## I.   STANDARD OF REVIEW

Upon the filing of an R&R by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1).  R&Rs are normally issued on dispositive matters, and the Court reviews proper objections to an R&R de novo.  However, the Reitman Motion was erroneously filed by Plaintiffs as a dispositive motion when in fact it is a nondispositive discovery motion seeking relief under Federal Rule of Civil Procedure 37(c)(1), not Federal Rule of Evidence 702 or *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  The Court will thus treat the R&R as an order denying a nondispositive motion and review the R&R under the deferential standard of review for such orders.  *See 4Brava, LLC v. Sachs*, No. CV 15-2743 (JRT/DTS), 2018 WL 2254568, at *1 & n.1 (D. Minn. May 17, 2018).

"A district court's review of a magistrate judge's decision on nondispositive matters is 'extremely deferential.'"  *Id.* at *1 (quoting *Roble v. Celestica Corp.*, 627 F. Supp. 2d

1008, 1014 (D. Minn. 2007)).  The Court will reverse a magistrate judge decision on a nondispositive matter only if it is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2(a).  For a decision to be clearly erroneous, the Court must have a "definite and firm conviction that a mistake has been committed."  *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

Because the R&R, the Powling Order, and the Supplemental Discovery Order all involve non-dispositive matters, the Court will review the parties' objections and appeals for clear error.

## II.    REVIEW OF THE REPORT AND RECOMMENDATION

Plaintiffs seek to exclude Reitman from testifying that Rockline wipes satisfy any GD4 tests under Rule 37(c)(1) because, they argue, such testimony is a new, previously undisclosed, and untimely opinion under Rule 26.  The Magistrate Judge recommends denying Plaintiffs' Motion because:  (1) their request that Reitman be prohibited from offering **any** opinions regarding GD4 is not warranted since Reitman reviewed the GD4 guidelines, referenced them in her report, and incorporated them into her critique of Menna's analysis; (2) arguments regarding the admissibility of her testimony would be better raised at trial where her testimony will have context; (3) Rockline conducted testing and supplemented discovery in a timely fashion; (4) Reitman's deposition testimony regarding the GD4 did not change the trajectory of her analysis or constitute impermissible after-the-fact bolstering or altering of her opinion; and (5) Plaintiffs cannot use Reitman as

a means of reopening fact discovery. However, because questions of admissibility might be appropriate at trial, the Magistrate Judge recommended that the denial be without prejudice. None of these findings is clearly erroneous; thus, the Court will overrule Plaintiffs' objections, adopt the R&R, and deny the Reitman Motion without prejudice.

### A.    Rule 26 Disclosures

Rule 26(a)(2)(B) requires a retained expert, like Reitman, to "produce a detailed expert report." *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018). This report must contain a "complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). These disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Here, Reitman's initial disclosure and report were due July 2, 2018. (5th Am. Pretrial Scheduling Order at 3, May 1, 2018, Docket No. 431.)

Rule 26(e) requires parties to supplement the testimony of their expert witness "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A); *see also United States v. STABL, Inc.*, 800 F.3d 476, 488 (8th Cir. 2015). Supplemental disclosures must be disclosed at least 30 days before trial unless otherwise ordered. Fed. R. Civ. P. 26(e)(2), 26(a)(3)(B). A supplemental report must not materially alter an expert's original report. *Williams v. TESCO Services, Inc.*, 719 F.3d 968, 976 (8th Cir. 2013). However, it may update "a

previously-disclosed assessment . . . based on additional information." *Kahle v. Leonard*, 563 F.3d 736, 741 (8th Cir. 2003).

When a party fails to properly disclose or supplement expert testimony under Rule 26, the party may not use the late-disclosed information or witness "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

### B. Plaintiffs' Objections

Plaintiffs object to the R&R on the grounds that Reitman's opinion that Rockline wipes comply with GD4 was not timely disclosed under Rule 26(a) and not a proper supplement under 26(e).

First, the Magistrate Judge did not clearly err in finding that Reitman should not be prohibited from offering **any** opinions with respect to GD4 because she did include some discussion of GD4 in her initial report. (R. & R. at 9.) Plaintiffs do not appear to object to this recommendation, instead focusing on whether Reitman should be able to testify regarding Rockline wipes' compliance with GD4.

That Magistrate Judge did not err in finding that any supplementation of Reitman's opinions based on the GD4 test results was proper under Rule 26(e) because the results were not available to Reitman (or Rockline) when Reitman's report was due and because the opinions did not "change the trajectory of Dr. Reitman's analysis." (*Id.* at 10.)

As to when the GD4 test results were available, Plaintiffs argue that the testing was commissioned on June 22, 2018, and that the relevant tests were concluded on June 25 and 29, prior to the report disclosure deadline of July 2. (Pls.' Objs. at 13.) However, as the Magistrate Judge properly noted, the lab report containing the results of the GD4 testing is

"dated July 23, 2018, weeks after Dr. Reitman's report." (R. & R. at 9.) It may be that some or all of the GD4 testing was completed in June, but Plaintiffs have not established that Rockline had the report with the test results before July 23, or that Rockline even had reason to know that some of the tests had already been completed. Indeed, some of the testing done for the report was not completed until July 18 and 23. (GD4 Testing Report at 13, 19.) There is no evidence to support Plaintiffs' allegations that Rockline strategically chose to delay disclosure or to conceal this information from Reitman until after she issued her report. (Pls.' Objs. at 13.)

As to whether incorporation of the testing results changed the trajectory of Reitman's analysis, the Magistrate Judge did not clearly err. The Magistrate Judge correctly noted that Reitman "reviewed the GD4 guidelines in connection with her analysis; referenced the GD4 guidelines in her report and discussed salient differences between and among them, the GD3 guidelines, and Dr. Menna's testing parameters; and incorporated them into her critique of Dr. Menna's analysis." (R. & R. at 9.) He correctly noted that Reitman testified that the GD4 test results did not change the scope of her analysis, which was the "foundation for Dr. Menna's work." (R. & R. at 10.) It was not clear error to conclude that the "GD4 test results were a previously unavailable fact . . . consistent with [Reitman's] prior opinions" that "did not change the trajectory of [her] analysis." (*Id*. at 10.) Because the Magistrate Judge's conclusions and recommendations were not clearly erroneous, the Court will overrule Plaintiffs' objections, adopt the R&R, and deny the Reitman Motion without prejudice.

C.    **Rule 37(c)(1)**

Furthermore, even if Reitman's testimony was untimely or improper supplementation, Plaintiffs have not established that the testimony should be excluded under Rule 37(c)(1). Rockline persuasively argues that any arguably untimely disclosure is both substantially justified and harmless.

As discussed above, Reitman did not disclose any reliance on the GD4 test results in her July 2, 2018 report because the report did not yet exist. As such, any arguably untimely disclosure was substantially justified.

In their initial brief in support of the Reitman Motion, Plaintiffs argue that they would be prejudiced by the admission of this testimony for two reasons: (1) Rockline has refused to supplement its document production relating to GD4 documents, and (2) the GD4—along with other INDA guidelines—are the product of collusion, and compliance with these guidelines cannot support labeling the wipes as "flushable." The first argument is unavailing for the reasons discussed below relating to Plaintiffs' Supplemental Discovery Motion. As to the second argument, Plaintiffs are free to argue that compliance with industry standards established through collusion is insufficient to establish Rockline's affirmative defense in their dispositive motions and before the jury. But these arguments have no bearing on the timing of the disclosure of Reitman's opinion or on whether the timing of the disclosure was harmful.

Ultimately, "[t]he purpose of [] modern discovery procedure is to narrow the issues, **to eliminate surprise**, and to achieve substantial justice." *Tenbarge v. Ames Taping Tool Systems, Inc.*, 190 F.3d 862, 865 (8th Cir. 1999) (quoting *Mawby v. United States*, 999 F.2d

-15-

1252, 1254 (8th Cir. 1993)) (emphasis in original). Here, Rockline solicited testing of its wipes shortly after the GD4 were released and turned the results over to Plaintiffs' counsel shortly after receiving them. These disclosures were done well in advance of trial and well in advance of the Rule 26(a)(3) pretrial disclosure deadline. Furthermore, Plaintiffs have been on notice that GD4 would be relevant to this case throughout discovery. The Court cannot say that the disclosure, even if untimely, results in surprise or substantial injustice.

Even if the Court were to sustain Plaintiffs' objections as to the Magistrate Judge's findings, it would still deny the Reitman Motion because any arguably untimely disclosure was both substantially justified and harmless.

## III.    REVIEW OF THE SUPPLEMENTAL DISCOVERY ORDER

Plaintiffs moved to compel Rockline to supplement its production on GD4, arguing that the significance of GD4 only became apparent when Reitman referenced GD4 in her report and testimony and when Rockline turned over the GD4 test results. Plaintiffs argued that Rockline had shifted its affirmative defense from compliance with GD3 to compliance with GD4 following the close of discovery. The Magistrate Judge denied the Supplemental Discovery Motion, concluding that "the publication of the GD4 guidelines was not a watershed moment in this litigation," that Plaintiffs have been aware of GD4 throughout the litigation, and that Plaintiffs have had ample opportunity to pursue more robust discovery on GD4. (Suppl. Discovery Order at 12-13.) These conclusions are not clearly erroneous; thus, the Court will deny Plaintiffs' appeal and affirm the Supplemental Discovery Order.

-16-

Plaintiffs appeal the Supplemental Discovery Order on two grounds:  (1) the Magistrate Judge erroneously concluded that Plaintiffs seek to reopen discovery when all they request is supplemental discovery related to GD4, "an issue that Rockline voluntarily injected into the case through its expert long after discovery closed," and (2) even if Rockline were not required to supplement its production under Rule 26(e)(1)(A), its "express reliance on GD4 after the close of discovery as a defense" should require production under Rule 26(e)(1)(B).  (Pls.' Appeal at 3.)

Plaintiffs' central argument is that Rockline's reliance on GD4 is new.  The Magistrate Judge did not clearly err in finding that it is not.  It is disingenuous to say that Rockline "injected" GD4 into the case long after discovery closed or that Rockline changed its defense from compliance with GD3 to compliance with GD4 after the close of discovery.  As the Magistrate Judge correctly noted, Rockline's asserted defense was that it "complied with industry standards."  (Rockline's Answer at 84.)  It is Plaintiffs that read this phrase to mean GD3; Rockline never expressly limited its defense to GD3.  Furthermore, the Magistrate Judge correctly noted that Plaintiffs have been aware of the discussions around GD4 and their development throughout this litigation.  A technical working group began working on the GD4 in 2013, well before the litigation began.  Three of the individuals Plaintiffs use to support their claims were involved in the GD4 discussions.  Plaintiffs also acknowledge receiving about 1,000 documents mentioning GD4 dated within the agreed upon discovery time frame.  (*See* Suppl. Discovery Order at 5.)  Yet Plaintiffs agreed to a production cutoff of January 2017.

Plaintiffs argue that they "never agreed to suspend Rockline's Rule 26(e) obligations for later raised defenses"; thus, "[t]he Magistrate Judge erred when he concluded that [the January 2017] deadline suspended Rockline's duty to supplement." (Pls.' Appeal at 13.) But GD4 is not a later raised defense, and the Magistrate Judge did not conclude that Rockline's duty to supplement was suspended. Rather, the Magistrate Judge concluded that Rockline's duty to supplement was not triggered because Plaintiffs did not seek corrective information but rather sought information outside the parties' agreed upon discovery period. This conclusion is not clearly erroneous.

The Magistrate Judge also correctly noted that Plaintiffs were made aware in December 2017, if not before, that GD4 would be released in 2018. Yet Plaintiffs did not promptly move to reopen discovery on GD4, despite raising other concerns regarding the temporal scope of discovery. (*See* Suppl. Discovery Order at 11.)

The Court "has very wide discretion in handling pretrial discovery." *U.S. ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1082 (8th Cir. 2014) (quoting *Voegeli v. Lewis*, 568 F.2d 89, 96 (8th Cir. 1977)). The disputed conclusions of the Magistrate Judge are not clearly erroneous; thus, the Court will deny Plaintiffs' appeal and affirm the Supplemental Discovery Order. The Court, like the Magistrate Judge, reminds Plaintiffs that they can seek exclusion pursuant to Rule 37(c)(1) of information that Rockline has not properly disclosed.

## IV.    REVIEW OF THE POWLING ORDER

Plaintiffs moved to compel production of documents that Powling considered in relation to his testimony but that Kimberly-Clark withheld as privileged. The Magistrate Judge granted the Powling Motion in part, ordering Kimberly-Clark to produce all documents listed on Kimberly-Clark's Amended Privilege Log that were authored or received by Powling. He denied the Powling Motion in part, finding that Kimberly-Clark did not need to produce documents that Powling did not consider (including documents created after December 1, 2016), documents that related to draft expert disclosures in other flushable wipes litigation, and documents related to Kimberly-Clark's lobbying efforts. Kimberly-Clark appeals the Powling Order to the extent it held that Kimberly-Clark had waived privilege as to any documents Powling considered. Because the majority of the Magistrate Judge's conclusions were not clearly erroneous, the Court will deny Kimberly-Clark's appeal and affirm the Powling Order except as to Document Numbers 92, 100, and 895.

### A.    Non-Reporting Expert Witnesses

Federal Rule of Civil Procedure 26(a)(2)(C) governs disclosure of expert witnesses that are not retained and therefore do not need to submit written reports. "The distinguishing characteristic between expert opinions that require a report and those that do not is whether the opinion is based on information the expert witness acquired through percipient observations or whether, as in the case of retained experts, the opinion is based on information provided by others or in a manner other than by being a percipient witness to the events in issue." *United States v. Sierra Pac. Indus.*, No. CIV S-09-2445, 2011 WL

2119078, at *4 (E.D. Cal. May 26, 2011). Non-reporting witnesses are often hybrid witnesses, offering both fact and expert testimony.

In 2010, Rule 26 was amended to provide work-product protection for drafts of expert reports or disclosures for both reporting and non-reporting experts. *See* Fed. R. Civ. P. 26 Advisory Committee's note to 2010 Amendment. It was also amended to protect communications between a party's attorney and reporting experts, but the Advisory Committee specifically noted that the amended rule "does not itself protect communications between counsel and other expert witnesses," including hybrid witnesses designated under Rule 26(a)(2)(C). *See id.* Nevertheless, the Advisory Committee noted that the rule "does not **exclude** protection under other doctrines, such as privilege or independent development of the work-product doctrine." *Id.* (emphasis added).

The Eighth Circuit has not yet considered how these amendments affect the application of attorney-client and work-product privilege to hybrid witnesses. But this Court concluded in a helpful opinion that the amendments "did not change any existing precedent regarding privilege waiver of non-reporting experts that existed prior [to 2010]." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. 14-CV-03103 (SRN/FLN), 2016 WL 6774229, at *3 (D. Minn. Nov. 15, 2016) (citation omitted) (alteration in original). The Court noted that the parties had agreed that, under pre-2010 precedent, the waiver of privilege attached to non-reporting experts "extends to any documents and information [they] considered in connection with [their] proposed testimony." *Id.* at *5. The Court further noted that "considered" is to be interpreted broadly as covering everything that the expert was exposed to and not only what the expert actually relied upon. *Id.* (citing *In re*

-20-

*Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001); *Johnson v. Gmeinder*, 191 F.R.D. 638, 649 (D. Kan. 2000); *PacifiCorp v. Nw. Pipeline GP*, 879 F. Supp. 2d 1171, 1213 (D. Or. 2012)).

### B.     Kimberly-Clark's Appeal

As a preliminary matter, the Court finds no clear error in the Magistrate Judge's conclusion that Kimberly-Clark's Rule 26(a)(2)(C) disclosure is sweeping and all-encompassing and cannot reasonably be read to limit Powling's testimony to five enumerated issues, as Kimberly-Clark contends.  Not only does Kimberly-Clark's disclosure include a broad "catch-all" provision indicating that Powling "might provide opinions or inferences based on his knowledge and experience," it also suggests that Powling's testimony regarding the five enumerated topics will extend well beyond those five topics.  For example, Powling will rebut Menna's and Dick's testing, and Powling's rebuttal opinions will be based in part on "his knowledge of the proprietary technologies that allow Kimberly-Clark flushable wipes to immediately begin losing strength when they come into contact with water."  (Am. Powling Disclosure at 17.)  This disclosure broadens the scope of Powling's testimony to include opinions related to Kimberly-Clark's flushable wipes technology generally.

The remainder of the five issues implicate similarly broad topics, including general opinions on the capacity of Kimberly-Clark's wipes versus non-flushable products to cause pump clogs, wastewater proposals regarding flushable wipes, and whether wipes labeled flushable are capable of causing clogs or damages to equipment.  The Court finds no clear distinction between these broad topics and Powling's general knowledge and experience

-21-

concerning flushable wipes, specifically Kimberly-Clark's wipes.    What is more, Kimberly-Clark provides no limiting principle.  The Court thus finds no clear error in the Magistrate Judge's conclusion that Kimberly-Clark's broad Rule 26(a)(2)(C) disclosure waived attorney-client and work-product protection for documents Powling considered in connection with Kimberly-Clark's flushable wipes.

The Court will now turn to Kimberly-Clark's arguments regarding the Magistrate Judge's interpretation and application of case law.

Kimberly-Clark first notes that, in *Luminara*, both sides agreed regarding the pre-2010 rule regarding disclosure of documents and information considered by a non-reporting expert and that the Court did not do an in-depth analysis of what the Eighth Circuit's general rule actually was.  Kimberly-Clark argues that the *Luminara* parties' agreement overstated the general rule as found in the two cases the Court cited for support: *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d at 1375, and *James River Ins. Co. v. Interlachen Propertyowners Assn.*, No. 14-cv-3434, 2015 WL 9946407, at *4 (D. Minn. Dec. 21, 2015).

Kimberly-Clark argues that *In re Pioneer Hi-Bred*, a Federal Circuit case applying Eighth Circuit law, held only that a party must disclose any information "**supplied to** a testifying expert in connection with his testimony."  238 F.3d at 1375 (emphasis added). Thus, Kimberly-Clark argues that information supplied to an attorney by the expert is not covered.  Kimberly-Clark is correct as to the specific wording of the Federal Circuit decision.  But the only information at issue in that case was information that had been supplied **to** a testifying expert; thus, the Federal Circuit had no reason to address

-22-

information supplied **by** a testifying expert. Yet the Federal Circuit also recognized *United States v. Cote*, 456 F.2d 142 (8th Cir. 1972), as the Eighth Circuit's seminal case on the attorney-client privilege issue. *Id.* at 1374. In *Cote,* the Eighth Circuit held that "[a] client may waive the privilege which protects what he earlier confided to his attorney or his attorney to him." 456 F.2d at 144-45. As such, Eighth Circuit case law does not limit waiver of privilege to communications from the attorney to the expert. Neither *Luminara*'s reliance on *In re Pioneer Hi-Bred* nor the Magistrate Judge's application of these cases to the present case is clearly erroneous.

Kimberly-Clark argues that *James River Insurance Company* stands for the proposition that disclosure of information by an attorney to an expert does **not** waive work-product privilege. 2015 WL 9946407, at *4. Kimberly-Clark is correct but fails to note that *James River* involved a retained Rule 26(a)(2)(B) expert, not a hybrid Rule 26(a)(2)(C) expert. Indeed, the Court in *James River* discussed the very 2010 amendments that added work-product protection for reporting experts but expressly declined to add such protections for non-reporting experts, except as to drafts of reports or disclosures. Furthermore, the Court noted that, under pre-2010 caselaw, voluntary production of materials to a testifying expert witness created an "automatic, complete waiver of the attorney work product privilege." *Id.* at *6. Thus, *James River* supports *Luminara*, as well as the Magistrate Judge's opinion in this case, and the Court finds no clear error in its application to this case.[2]

---

[2] Kimberly-Clark also cites *United States v. R.J. Zavoral & Sons, Inc.*, for the proposition that Rule 26 does not preclude application of the work-product doctrine. No. 12-CV-668

Furthermore, Kimberly-Clark disputes the Magistrate Judge's reliance on *Sierra Pacific*, 2011 WL 2119078, an unpublished case from the Eastern District of California analyzed under Ninth Circuit precedent.  The Court finds no clear error in the Magistrate Judge's discussion of *Sierra Pacific*.  It is a persuasive case that the Court may consider and does not directly conflict with any binding Eighth Circuit precedent.  Furthermore, it contains a well-reasoned summary of the policy reasons underlying the Advisory Committee's decision to provide more protections for attorney communications with retained witnesses but not to provide the same protections to communications with hybrid witnesses.

*Sierra Pacific* is particularly persuasive given the circumstances of this case.  The court noted that the Advisory Committee "decided not to protect communications with employee experts, for fear of unintended consequences," namely line-drawing problems and "obvious opportunities for mischief.'"  2011 WL 2119078, at *6 (quoting Minutes at 20, Civil Rules Advisory Committee Meeting (April 20–21, 2009)).  Indeed, the *Sierra Pacific* court discussed an example considered by the Advisory Committee that is strikingly similar to the facts of the issue at hand:

> For example, if an employee engineer designed a product that was the subject of a product liability case, it would be difficult to separate the engineer's sense impressions leading up to the design of the product with his expert opinions at trial, and to distinguish between attorney communications regarding the former from those regarding the latter.

---

(MJD/LIB), 2014 WL 12756821, at *17 (D. Minn. Apr. 23, 2014).  But the question in the instant case is not whether Rule 26 precludes work-product privilege, it is whether such privilege was waived—a question *R. J. Zavoral & Sons, Inc.* did not answer.

*Id.* at *6. The Advisory Committee was concerned that, because "employee experts often will also be 'fact' witnesses by virtue of involvement in the events giving rise to the litigation," more limited discovery "might not be adequate to show the ways in which the expert's fact testimony may have been influenced." *Id.* at *7 (quoting Report of the Civil Rules Advisory Committee at 4-5 (May 8, 2009, amended June 15, 2009)).

The case before the Court presents a similar concern. Powling is the Research & Engineering Technical Leader for Kimberly-Clark, has extensively studied Kimberly-Clark's flushable wipes in commercial and municipal settings, and has been involved with the development of flushability guidelines. (Am. Powling Disclosure at 15-16.) It would be difficult to separate Powling's sense impressions relating to this work from his expert opinions on a broad range of issues at trial, and Plaintiffs must have the opportunity to expose any "attorney-caused bias." *Sierra-Pacific*, 2011 WL 2119078, at * 10.

The Magistrate Judge did not err in considering the persuasive reasoning of *Sierra Pacific* and finding in this factually similar case that Kimberly-Clark waived privilege for documents that Powling considered.

Kimberly-Clark argues that, even if *Sierra Pacific* is persuasive, it does not "[r]equire" the Magistrate Judge's conclusions. (Kimberly-Clark Appeal at 14.) This argument ignores the deferential standard under which the Court must review the Magistrate Judge's order. The Court may only overturn the order if it "is left with the definite and firm conviction that a mistake has been committed." *Lisdahl*, 633 F.3d at 717 (quoting *Anderson*, 47 U.S. at 573). Here, the Magistrate Judge did not misapply precedent, carefully considering numerous persuasive cases and making a reasonable

decision given the facts of this case.  Even if the Court agreed with Kimberly-Clark, the Powling Order is entitled to substantial deference.

Kimberly-Clark argues that the Magistrate Judge's decision guts the attorney work-product doctrine because every non-retained expert will be relying on knowledge or experience concerning the subject matter.  But not every non-retained expert's testimony will be so broad, and not every non-retained expert's experience will so completely overlap with the testimony he or she is asked to give.  The Magistrate Judge did **not**, as Kimberly-Clark argues, find that all non-retained experts waive privilege related to their knowledge and experience rather than their actual topics of testimony.  Rather, the Magistrate Judge found that the topics of testimony disclosed in this case were so broad as to encompass all of Powling's knowledge and experience related directly to Kimberly-Clark's flushable wipes.  This finding was not clearly erroneous; thus, the Court will deny Kimberly-Clark's appeal and affirm the Powling Order.

### C.    Kimberly-Clark's Request for Modification

Alternatively, Kimberly-Clark seeks to modify the Powling Order to provide that privilege has not been waived as to Document Numbers 17-18, 23, 25, 29, 41-45, 466-82, 577, 653-62, 665-70, 694, 906-14.  (Kimberly-Clark's Appeal at 16.)  The Magistrate Judge did not find that privilege was waived as to these documents; rather, he noted that Plaintiffs did not seek production of those documents.  (Powling Order at 16 n.4.)  Thus, the Order requires no modification.

Kimberly-Clark also seeks to modify the Powling Order to deny the Powling Motion as to Document Numbers 19, 20, 85, 88, 92, 93, 95, 100, and 895 because they "relate to

lobbying and legislative efforts." (Kimberly-Clark's Appeal at 17.)  Kimberly-Clark did not specifically identify these documents as related to lobbying or legislative efforts in their brief opposing the Powling Motion.  (*See* Kimberly-Clark's Mem. Opp. at 10, Nov. 19, 2018, Docket No. 693 (referencing 3d Gustafson Decl. ¶ 15, Ex. M ("Privilege Log"), Nov. 12, 2018, Docket No. 667-1).)  Furthermore, the descriptions for documents 19, 20, 85, 88, 93, and 95 on the privilege log do not refer to lobbying or legislative efforts.  (*See* Privilege Log at 87, 92-93.)  The Court can thus find no clear error in the Magistrate Judge's decision not to exclude these documents from the production order and will deny Kimberly-Clark's request to modify the Powling Order as to those documents.  However, the descriptions of Document Numbers 92 (when read with 91), 100, and 895 do reference legislation.  (*See id*. at 93-94, 167.)  Denial of Plaintiffs' motion as to those documents is consistent with the Magistrate Judge's conclusions, (*see* Powling Order at 17); thus, the Court will grant Kimberly-Clark's appeal to the extent that it seeks to protect Document Numbers 92, 100, and 895, and will order that the Powling Order be modified accordingly.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiffs' Objections to the Report and Recommendation [Docket No. 876] are **OVERRULED**, the Magistrate Judge's Report and Recommendation [Docket No. 861] is **ADOPTED**, and Plaintiffs' Motion to Exclude Expert Testimony [Docket No. 507] is **DENIED without prejudice;**

CASE 0:15-cv-02101-JRT-TNL    Doc. 1044    Filed 05/28/19    Page 28 of 28

2.      Plaintiffs' Appeal of the Magistrate Judge's Order Denying Plaintiffs'

Motion to Compel [Docket No. 866] is **DENIED**, and the Magistrate Judge's Order

[Docket No. 862] is **AFFIRMED;**

3.      Defendant Kimberly-Clark's Appeal of the Magistrate Judge's Order

Granting in Part and Denying in Part Plaintiffs' Motion to Compel [Docket No. 864] is

**GRANTED in part and DENIED in part**, and the Magistrate Judge's Order [Docket No.

863] is **AFFIRMED in part and MODIFIED in part** as set forth herein.

The parties shall show cause on or before fourteen (14) days from the date of this

Order why the Court should not unseal the Order and specify any portion of the Order that

warrants redaction.


DATED:  May 28, 2019                    _____ _John n. Tunheim_ _____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                    Chief Judge
                                          United States District Court